Marie V. SHARP, Plaintiff
and Appellant,

v.

Noel WILLIAMS and Does 1 through
10, Defendants and Appellee.

No. 940379.

Supreme Court of Utah.

April 4, 1996.

Robert W. Hughes, Salt Lake City, for Sharp.

J. Angus Edwards, Salt Lake City, for Williams.

HOWE, Justice:

Plaintiff Marie Sharp, a mail carrier, was injured in a confrontation with the dog of defendant Noel Williams. Sharp appeals from a judgment of no cause of action entered on a jury verdict.

## FACTS

We recite the facts in a light favorable to the jury verdict. *Cornia v. Wilcox*, 898 P.2d 1379, 1382 (Utah 1995). Prior to the incident giving rise to this case, Sharp had been employed for four years as a mail carrier for the U.S. Postal Service. On October 3, 1992, she was making her usual rounds in the Sugarhouse area of Salt Lake City. Williams was sitting in a chair on his front porch with his English bulldog, Alex, next to him. Alex was attached to an eighteen-foot chain that prevented him from reaching the sidewalk running along the street. Alex stands about sixteen inches at the shoulders and weighs about seventy pounds.

Williams first noticed Sharp when a neighbor's dog started barking at her. While speaking amicably to the neighbor's dog, with which she was familiar, Sharp approached Williams' home by walking across his front lawn toward his porch where his mailbox was located. Her view of the porch was partially obstructed by a rose bush, and she did not notice Alex. As she approached, Alex descended the porch steps and "trotted" toward her, breathing loudly in what Sharp perceived as growling.

Surprised and frightened by Alex, Sharp yelled loudly to Williams, "Get him off of me, get him off of me," as she began backing up, still facing Alex. These actions were consistent with Sharp's postal service training in dealing with such confrontations. Alex continued directly toward her. After taking three or four steps, with Alex at her feet, she fell backward, causing serious injuries to her back. There was little, if any, actual contact between Alex and Sharp, either before or after her fall.[1] Williams hurried over to Alex, grabbed him by his collar, spun him around, and kicked him "a couple of times" to move him away from her. The kicking further upset Sharp, who told Williams, "Don't hurt the dog—it isn't his fault."

At Sharp's request, Williams called her supervisor. She remained on the ground for approximately fifteen minutes until her supervisor arrived. With his help, she attempted to continue delivering mail but found it too painful and sought medical care. She suffered an L–1 compression fracture of her back, and she was unable to work for four months. She has since been unable to continue as a mail carrier and has been transferred by the postal service to a noncarrier position.

Sharp knew that Williams had a dog because she had previously noticed the chain on

---

1. The testimony is disputed on this point. Williams testified that Alex was close enough to have touched Sharp below the knee but that she tripped and fell backward. A neighbor across the street testified that Alex was at Sharp's feet when she fell but that he couldn't tell if Alex touched her. Sharp testified that Alex "charged" her and "lunged" toward her and she "was knocked backwards." The trial court, in denying Sharp's motion for a new trial, noted "the lack of contact by defendant's dog."

the front porch, but she had never before seen Alex. Susan Wrathall, who lived with Williams, had a practice of not allowing Alex to be outside before the mail was delivered to the home.

Williams and Wrathall admitted that Alex can become overly excited and disobedient. Wrathall testified that previously Alex had "punctured" her ankle and had bitten a neighbor on the arm, causing him to bleed. Williams testified that he had been bruised by Alex's teeth and that Alex had experienced some altercations with the neighbor's dog.

Sharp brought this action on the grounds of both common law negligence and statutory liability under section 18–1–1 of the Utah Code, which provides, "Every person owning or keeping a dog shall be liable in damages for injury committed by such dog...." The matter was tried before a jury. Without objection from either party, the trial court gave the jury a comparative negligence jury instruction. The jury found that Williams was negligent and that his negligence was a proximate cause of Sharp's injuries. However, the jury also found that Sharp was contributorily negligent and that her negligence was a proximate cause of her injuries. The jury attributed fifty percent of the negligence to Williams and fifty percent to Sharp. The jury found $10,653.33 in general damages and no special damages. On the basis of these findings, the trial court entered a judgment of no cause of action. *See* Utah Code Ann. § 78–27–38 (plaintiff may recover from defendant only if defendant's fault exceeds his or her own). Sharp moved for judgment notwithstanding the verdict, to amend judgment, and/or for a new trial. The trial court denied the motions.

## MOTION FOR NEW TRIAL

■ Sharp contends that the trial court erred in denying her motion for a new trial because under Utah Rule of Civil Procedure 59(a)(6), there was insufficient evidence to justify the jury verdict. Where the trial court has denied a rule 59(a)(6) motion for a new trial,

> its decision will be sustained on appeal if there was "an evidentiary basis for the

jury's decision...." The trial court's denial of a motion for a new trial will be reversed only if the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.

*Nelson v. Trujillo,* 657 P.2d 730, 732 (Utah 1982) (quoting *McCloud v. Baum,* 569 P.2d 1125, 1127 (Utah 1977)); *accord King v. Fereday,* 739 P.2d 618, 621 (Utah 1987); *see also Price–Orem Inv. v. Rollins, Brown, & Gunnell,* 713 P.2d 55, 58 (Utah 1986) (denial of motion for new trial reversed if marshaled evidence not sufficiently substantial or credible to support verdict).

In its order denying Sharp's motion for a new trial, the trial court made written findings of fact. It noted, "The jury had extensive testimony and evidence concerning the appearance, approach, and the lack of contact by defendant's dog." Specifically, the court found that there was no evidence that Alex, in "trotting" toward Sharp, "was obviously menacing, growling, had its ears pinned back or was otherwise attacking Plaintiff" and that "there was no evidence to show that defendant's dog did not approach Plaintiff in a friendly or unthreatening manner." In addition, the court found that Sharp took a shortcut across Williams' lawn, was not paying attention immediately before the accident, overreacted to Alex's approach, and was clumsy in her reaction. The court concluded that the evidence at trial adequately demonstrated Sharp's contributory negligence.

■ We examine each of these facts separately, noting that they will not be set aside unless clearly erroneous. Utah R.Civ.P. 52(a); *Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1286 (Utah 1993). First, the trial court noted the "lack of contact" between Sharp and Alex. This fact is of little or no importance. Section 18–1–1 of the Utah Code provides:

> Every person owning or keeping a dog *shall be liable in damages for injury committed by such dog,* and it shall not be necessary in any action brought therefor to allege or prove that such dog was of a vicious or mischievous disposition or that

the owner or keeper thereof knew that it was vicious or mischievous. . . .

Utah Code Ann. § 18–1–1 (emphasis added). This statute makes a dog's owner or keeper strictly liable for damages caused by the dog, thus making it unnecessary for the injured party to allege and prove negligence on the part of the dog owner or keeper. *See Neztsosie v. Meyer*, 883 P.2d 920, 921 (Utah 1994); *Reeves v. Gentile*, 813 P.2d 111, 117 (Utah 1991). The statute does not specifically require physical contact between the dog and the injured party. It is only necessary that the dog "committed" the injury.

Other jurisdictions have properly imposed liability where the victim reacted to the dog's behavior so as to harm himself even though there was no actual contact between the dog and the victim. *See, e.g., Farrior v. Payton*, 57 Haw. 620, 562 P.2d 779, 787 (1977) (directed verdict for dog owner improper where plaintiffs fell off rock wall in their efforts to escape dog); *Henkel v. Jordan*, 7 Kan. App.2d 561, 644 P.2d 1348, 1352 (1982) (jury question where dog darted into street to pursue cyclist who made evasive turn and fell); *Henry v. Brown*, 495 A.2d 324, 326 (Me.1985) (question of fact whether dog caused injuries despite lack of contact); *Morris v. Weatherly*, 488 N.W.2d 508, 510 (Minn. Ct.App.1992) (dog "caused" injuries where he chased cyclist who injured himself during rapid dismount); *Machacado v. City of New York*, 80 Misc.2d 889, 365 N.Y.S.2d 974, 979 (1975) (same legal principles apply to "dog fright" case as to "dog bite" case where dog charged fence and plaintiff slipped on sidewalk in reaction). *See generally* 4 Am.Jur.2d *Animals* § 110 (1995); Annotation, *Liability of Dog Owner For Injuries Sustained by Person Frightened by Dog*, 30 A.L.R.4th 986 (1984).

The trial court found that Alex "trotted" toward Sharp and was not "obviously" menacing, growling, or attacking. Again, we find these facts of little import in determining whether Sharp was contributorily negli-

gent. Section 18–1–1 does not require proof of a full charge or attack for an owner to be liable for damages caused by a dog. There is no dispute that Williams' seventy-pound bulldog, unfamiliar to Sharp, descended the porch stairs and rapidly and directly approached her, breathing loudly in what she perceived as growling. Even after Sharp began backing up and yelling loudly for help, Alex continued toward her.[2] There is no dispute that she was genuinely frightened by Alex. That Alex was not charging at full speed or "obviously" attacking Sharp fails to indicate that her reactions were significantly negligent.

The trial court further found that "there was no evidence to show that defendant's dog did not approach Plaintiff in a friendly or unthreatening manner." This statement is inaccurate. Sharp, an experienced mail carrier, testified that Alex approached her in an unfriendly, threatening manner. Williams testified only that Alex left the porch and trotted toward Sharp with his tail wagging, his head "bobbing," and his ears "flopping," while breathing noisily. He did not comment further on Alex's approach. Elmer Robbins, a neighbor across the street, testified that Alex came out to meet Sharp and, from his vantage point, Alex did not look violent or threatening. We accept Robbins' testimony as accurate but note that no one characterized Alex's approach as "friendly," and we again emphasize that both Robbins and Williams agreed that Sharp was genuinely frightened by Alex.

The trial court noted that Sharp took a shortcut across Williams' lawn. We conclude that this fact says little, if anything, about Sharp's negligence. Mail carriers are encouraged by the postal service to take shortcuts across lawns unless doing so would put them in danger. Alex had never before been outside when Sharp had delivered the mail. Wrathall had a practice of keeping him indoors until the mail was delivered. Sharp cannot be considered negligent for crossing the lawn since she could reasonably assume

---

2. Sharp's cry for help was so loud that it was heard by both Wrathall, who was inside Williams' home, and Elmer Robbins, who was across the street about 120 feet away.

that Alex was inside the house as he had always been on prior deliveries.

█ Finally, the trial court found that Sharp was not paying attention immediately before the accident, overreacted, and was clumsy in reacting to Alex's approach. About the time Sharp entered Williams' property, she spoke amicably to the neighbor's dog which was barking at her and glanced at her mail. A rose bush partially obstructed her view of Williams' porch, and she did not see Alex. As she crossed Williams' lawn, Alex descended the porch steps and trotted about fifteen to twenty feet toward her. Sharp noticed Alex when he was about five or six feet away and reacted as she had been trained by backing away while maintaining eye contact and by yelling for help. Despite these actions, Alex continued toward her. After backing up approximately ten feet with Alex at her feet, she fell backward.

Sharp was performing her job in delivering mail to Williams' home and was lawfully on the premises. She did not provoke Alex or knowingly place herself in danger, the two actions most often cited as contributory negligence in other dog cases. Certainly she had reason to be apprehensive of Alex, an unfamiliar bulldog which his owner admitted becomes overly excited. She cannot be faulted for responding according to her training. After retreating ten feet with Alex still coming toward her, she fell backward. Although the fall may have involved some carelessness, one responding to a perceived emergency is not required to do so gracefully.

Viewing Sharp's conduct in its worst light, it does not justify placing a large share of the blame on her for her injuries. We hold that the evidence in support of the jury's finding of fifty percent contributory negligence is so slight and unconvincing as to make the verdict plainly unreasonable and unjust. *See Trujillo,* 657 P.2d at 732. Therefore, we conclude that the trial court abused its discretion in denying Sharp's motion for a new trial.[3]

---

**3.** Because we conclude that the trial court erred in denying Sharp's motion for a new trial, we do not address Sharp's other arguments, i.e., that

## COMPARATIVE NEGLIGENCE JURY INSTRUCTION

Sharp contends that the trial court erred in submitting a comparative negligence instruction to the jury. Although her trial counsel did not object to the instruction, we will address it briefly here given that the issue will arise again on retrial.

Sharp argues that her conduct could not in any way be considered a contributing factor in causing her injury and thus comparative negligence did not apply as a defense for Williams. She cites in support *Acculog, Inc. v. Peterson,* 692 P.2d 728 (Utah 1984). In that case, Acculog took its van to a repair shop that negligently installed a new fuel filter. Soon after, the van caught fire and was destroyed. Acculog did not keep a fire extinguisher in its van. Acculog requested that the trial court direct a verdict in its favor on the issue of its comparative negligence because the absence of the extinguisher was not relevant to the causation of the fire. The court refused, and the jury subsequently attributed eighty-six percent of the negligence to Acculog. *Id.* at 729.

█ On appeal, we held, "A plaintiff cannot be held to be contributorily negligent unless his negligence is causally connected to the plaintiff's injury." *Id.* at 730 (citations omitted). However, "where plaintiff's negligent conduct was a contributing factor in *causing* the injury, comparative negligence becomes a defense for the defendant." *Id.* We concluded that because there was no evidence at the trial that Acculog had in any way "caused" the fire, as opposed to its alleged failure to limit the damage caused by the fire, the trial court committed prejudicial error in submitting to the jury the question of Acculog's contributory negligence. *Id.* at 730–31.

Our holding in *Acculog* does not apply here. Although we have concluded that there was insufficient evidence to find that Sharp was fifty percent contributorily negligent, we cannot say that her conduct could in no way be considered a contributing factor in

the award of damages was given under the influence of passion or prejudice and that the judg-

causing her injury.[4]

Sharp also seems to imply, without any analysis or discussion, that because section 18–1–1 is a strict liability statute, the trial court is precluded from giving a comparative negligence instruction. Because Sharp did not brief this issue, we do not address it. Moreover, because Sharp proceeded to trial on the grounds of both statutory liability *and common law negligence*, the issue is not directly before us since the comparative negligence instruction was clearly proper under the common law claim.[5]

We reverse and remand for a new trial.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.

---

ment is contrary to law.   *See* Utah R.Civ.P. 59(a)(5), (7).

4. Our holding that the trial court abused its discretion in denying Sharp's rule 59(a)(6) motion for a new trial should not be construed to mean that on retrial any of the evidence discussed in this opinion should be excluded by the trial court as irrelevant.

5. We note that in March 1996, we heard oral arguments in the case of *S.H. v. Bistryski*. The parties in that case argued and briefed the proper application of comparative negligence principles in an action brought solely under section 18–1–1. We have taken the case under advisement.