**2016 UT App 249**

## THE UTAH COURT OF APPEALS

KACHINA CHOATE,
Appellant,
*v.*
ARS-FRESNO LLC,
Appellee.

Memorandum Decision
No. 20151054-CA
Filed December 30, 2016

Third District Court, Salt Lake Department
The Honorable Paige Petersen
No. 130907594

Levi H. Cazier, Attorney for Appellant

J. Angus Edwards, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Memorandum Decision, in which JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1    Late in December of 2012, Kachina Choate slipped and fell on a sidewalk outside a convenience store owned by ARS-Fresno LLC (ARS). In the negligence suit that followed, a jury found that ARS and Choate were each the proximate cause of Choate's fall but determined that Choate bore 60% of the fault. Because Choate was more at fault than ARS, the jury did not reach the question of damages. Choate filed a motion for a new trial, which was denied. She now appeals the denial of that motion, and we affirm.

¶2    "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand

issues raised on appeal." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 8 n.3, 372 P.3d 629 (citation and internal quotation marks omitted).

¶3      On December 28, 2012, Choate and her mother were grocery shopping. On their way between stores, they took a shortcut by walking across the convenience store parking lot. To avoid a car pulling into the convenience store, the two "stepped up onto the concrete walkway at the front of the store." Choate testified that although the sidewalk appeared wet, she did not see any ice. She nevertheless slipped on what she called "a patch of black ice" and fell. Once she landed on the ground, she saw and felt ice beneath her.

¶4      Choate's mother went into the store to report the accident. Choate eventually followed. The two women spoke with the clerk on duty, who had previously observed a water drip from the building's overhang onto the sidewalk in the area where Choate fell. The clerk called the manager of another ARS store and asked for assistance with the accident. The manager arrived ten to fifteen minutes later, but by that time, Choate and her mother had already left.

¶5      At trial, Choate argued that this drip led to the formation of black ice, including "a buildup of ice when the temperature was cold enough." It was the convenience store employees' practice to distribute ice melt over the spot where the water dripped if ice formation was likely. Choate's mother testified that there was no ice melt on the sidewalk when Choate fell, but the clerk testified he was "90% sure that he applied ice melt" that day "before" Choate's fall. The manager testified that when he arrived at the store, "there was adequate ice melt" on the sidewalk where Choate had fallen, and the clerk testified that he "was busy with customers and did not have time to apply ice melt between the time the accident was reported and when" the manager arrived, suggesting the ice melt the manager saw had

been in place before Choate's fall. The manager also testified that he did not see any ice on the sidewalk.

¶6     Multiple expert witnesses testified concerning potential causes of Choate's fall, including weather conditions, the construction of the sidewalk, and the soffit overhang with the associated water drip. The clerk also testified that Choate had declined to have an ambulance called; that the clerk "had never seen anyone walk across the gas station at an angle and get up on the walkway at the front of the store, when there was a perfectly good sidewalk in the same direction they were going"; that Choate did not appear injured; and that he found it "odd" that Choate and her mother, after reporting the accident, walked back toward the spot where Choate had fallen.

¶7     The jury determined that ARS and Choate "were both at fault and their fault had caused harm." But on a special verdict form, the jury apportioned fault 60% to Choate and 40% to ARS, barring Choate from recovering damages. *See* Utah Code Ann. § 78B-5-818(2) (LexisNexis 2012) (allowing recovery only when the fault of "any defendant or group of defendants . . . exceeds the fault of the person seeking recovery"). Choate moved for a new trial under rule 59(a) of the Utah Rules of Civil Procedure. The trial court denied the motion, concluding that "the evidence was sufficient for the jury to have decided in favor of either party."

¶8     In this appeal, Choate argues that the trial court should have granted her motion for a new trial because the "jury lacked sufficient evidence to determine that Choate was 60% at fault where ARS knew of the defect and failed to make [its] premises safe." "The trial court's denial of a motion for a new trial will be reversed only if the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Schreib v. Whitmer*, 2016 UT App 61, ¶ 31, 370 P.3d 955 (citation and internal

quotation marks omitted). The applicable standard is crucial to our disposition of this appeal. The Utah supreme court

> has held that the existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict when the sufficiency of the evidence is challenged on appeal. Indeed, it is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses, and we will not overturn a verdict on a challenge to the sufficiency of the evidence so long as some evidence and reasonable inferences support the jury's findings.

*Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 36, 31 P.3d 557 (alterations, citations, and internal quotation marks omitted).

¶9 To begin, Choate concedes the evidence was sufficient to support the jury's finding that she was at fault. She acknowledges:

> The jury could reasonably have found some negligence on the part of [Choate] (if, for example, the jury determined that [the clerk] had applied some icemelt, it might have reasonably determined that there were icemelt remnants that [Choate] should have noticed and that she should therefore have proceeded more slowly, or that she should have walked around the area.)[1]

---

1. In her briefing and in argument before this court Choate conceded that sufficient evidence existed to support a jury finding that Choate was 49% at fault, while maintaining that even one percent more was manifestly against the great weight of evidence.

In effect, Choate argues that while the jury could have found her negligent, it was wrong in finding her *as negligent* as it did. But Choate is unable to direct us to any law which provides that the exact percentage of negligence (or fault) can be determined as a matter of law. Instead, allocation of fault is quintessentially a jury question. *See Harris v. Utah Transit Auth.*, 671 P.2d 217, 222 (Utah 1983) (explaining that Utah's comparative negligence statute provides "the kind of comparison of fault that a jury ought to make").

¶10    But even without this concession, Choate's arguments fail. To begin the argument section of her brief, Choate sets forth the well-established negligence law of this state. She asserts that owners of premises are liable where there exists "'some unsafe condition of a permanent nature.'" (Quoting *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175, 176 (Utah 1975).) But that point is not disputed and, in fact, the jury found ARS negligent for failing to keep its premises safe.

¶11    Choate then asserts that the "verdict that [Choate] was more at fault than ARS was against the manifest weight of the evidence" and that the trial court should have granted her motion for a new trial. To support her position, she cites *Sharp v. Williams*, 915 P.2d 495 (Utah 1996), *Wilhelm v. Great Falls*, 685 P.2d 350 (Mont. 1984), and *Lehmkuhl v. Bolland*, 757 P.2d 1222 (Idaho Ct. App. 1988). We consider each of these cases in turn.

¶12    In *Sharp*, a mail carrier was injured after she walked across a dog owner's lawn and, startled by the dog coming toward her, fell backward and seriously injured her back. 915 P.2d at 496. The mail carrier knew that a dog lived at that particular residence but she had never seen him prior to the incident causing her injury. *Id.* at 496–97. The jury found the mail carrier contributorily negligent, assigning her 50% of the fault and barring her recovery. *Id.* at 497. The trial court denied the mail carrier's subsequent motion for a new trial. *Id.* Yet our supreme court reversed, noting that the trial court's denial of the

motion was based in part on the fact that there was no actual contact between the dog and the mail carrier. The supreme court explained, "This fact is of little or no importance," *id.*, specifically because the relevant statute "makes a dog's owner or keeper strictly liable for damages caused by the dog, thus making it unnecessary for the injured party to allege and prove negligence on the part of the dog owner or keeper" and "does not specifically require physical contact between the dog and the injured party. It is only necessary that the dog 'committed' the injury." *Id.* at 498. Thus, the trial court in *Sharp* made an error of law.

¶13 As for the trial court's finding that the mail carrier had taken a shortcut across the dog owner's lawn, the supreme court concluded "that this fact says little, if anything, about [the mail carrier's] negligence" because mail carriers "are encouraged by the postal service to take shortcuts across lawns unless doing so would put them in danger." *Id.* Because the dog's owner "had a practice of keeping [the dog] indoors until the mail was delivered," the supreme court reasoned that the mail carrier "cannot be considered negligent for crossing the lawn since she could reasonably assume that [the dog] was inside the house as he had always been on prior deliveries." *Id.* at 498–99. For these reasons, among others, the supreme court concluded "that the trial court abused its discretion in denying [the mail carrier's] motion for a new trial." *Id.* at 499.

¶14 Choate uses this case to argue that just as the mail carrier in *Sharp* "could not be considered negligent for cutting across the defendant's lawn because [she] could reasonably assume that the dog was inside the house as he always had been on prior deliveries, [Choate] should not be considered negligent for cutting across the ARS property." But this reading of *Sharp* cherry picks facts from that case that sound similar to the case before us without analyzing or applying the *Sharp* court's reasoning. That court held that the evidence in support of the finding of 50% fault was so slight and unconvincing as to make

the verdict unreasonable and unjust. *Id.* at 499. The present case is far different.

¶15     Additionally, *Sharp* was decided the way it was largely because of the strict-liability dog-owner statute. *See id.* at 497–99. No strict-liability statute applies here. Furthermore, we are not persuaded that the use of a shortcut in both *Sharp* and the present case is as similar as Choate suggests. The *Sharp* court determined that the mail carrier's choice of a shortcut said "little, if anything, about [her] negligence." *Id.* at 498. The mail carrier had been on the property countless times before, mail carriers are encouraged by the postal service to take shortcuts across lawns, and the mail carrier had never before seen the dog. *Id.* at 498–99. Indeed, she did not see the dog on the day of her injury until she was already near the house. *Id.* at 499. But in the present case, Choate "admitted that the sidewalk looked wet" and nevertheless "took a shortcut through the store's property," despite "there [being] some danger in choosing this path." And the jury heard evidence "that the sidewalk was not consistently dangerous, but depended on the weather conditions." In other words, while the *Sharp* plaintiff had no reason to believe the dog owner's property was dangerous, Choate saw potential danger—by recognizing that the sidewalk appeared wet—and others testified that the cold and snowy weather on the day of Choate's accident impacted the safety of the shortcut she took.

¶16     We next consider Choate's reliance on *Wilhelm v. Great Falls*, 685 P.2d 350 (Mont. 1984). There, a jury's verdict apportioned fault 90% to the plaintiffs and 10% to the defendants. *Id.* at 351. The trial court determined that the evidence was insufficient to support the verdict and ordered a new trial, and the Montana Supreme Court affirmed. *Id.* at 350. The facts of the *Wilhelm* case are inapplicable to the present case. *Wilhelm* involved plaintiffs who purchased a house near a dump and defendants who were responsible for a fire at the dump that damaged the plaintiffs' home. *Id.* at 350–51. Aside from the presence of a jury verdict apportioning liability between two

parties and a motion made for a new trial, *Wilhelm* appears to have little applicability to this case.

¶17    Similarly, *Lehmkuhl v. Bolland*, 757 P.2d 1222 (Idaho Ct. App. 1988), lacks any helpful direction for us. *Lehmkuhl*, an automobile personal injury case, involved mostly undisputed facts with one central dispute: "the precise location of the [involved] vehicles prior to the accident." *Id.* at 1223 (emphasis omitted). For reasons inapplicable to the case before us, the *Lehmkuhl* court determined "that the jury's assessment of negligence equally between [the parties] was against the great weight of the evidence. Similarly, the jury's finding of no damage was contrary to the evidence." *See id.* at 1226 (relying on the duty imposed by Idaho law upon "a person operating a motor vehicle" to "keep a proper lookout").

¶18    Choate's only analysis of these cases is that "[c]ase law from several other states is also instructive" because it supports the proposition that a trial court may grant a motion for a new trial even when a jury has found a plaintiff to be more at fault than the defendant. Then, without more, Choate concludes: "Examining the comparative fault of the parties in this case makes it clear that the evidence of contributory negligence here is slight and unconvincing and the verdict itself is plainly unreasonable and unjust and certainly against the great weight of the evidence." But in our view, what is "clear" is actually the opposite of this conclusion.

¶19    There were two stories told at trial: In one, Choate was careful and reasonable and slipped by no fault of her own. In the other, ARS was careful and reasonable and Choate slipped despite its efforts. The jury heard these two stories, including the evidence that supported and contradicted each, and it found that neither story was exactly right. Instead, it determined that both Choate and ARS bore responsibility for the fall. It weighed the evidence, the testimony presented, and the credibility of the witnesses, and it determined that responsibility belonged 40% to

ARS and 60% to Choate. This allocation of responsibility is a determination for the jury, one that an appellate court is loath to disturb absent compelling analysis.

¶20    Outside her limited analysis of the cases previously discussed, Choate's only attempt to persuade us to reverse consists of rearguing the evidence in her favor. She highlights the facts that supported her case at trial, and she indicates what evidence existed to contradict ARS's case. But there is perhaps no more basic tenet of appellate law than that we will not find new facts or reweigh evidence. *See, e.g.*, *Van Den Eikhof v. Vista School*, 2012 UT App 125, ¶ 5 n.1, 278 P.3d 622. We accept the facts that support the jury's verdict and that were reiterated by the trial court in denying Choate's motion for a new trial. In doing so, we acknowledge the following: (1) Choate and her mother testified that there was no ice melt on the sidewalk when Choate fell, but the clerk testified that he was 90% sure he had applied ice melt, and the manager testified that there was ice melt on the sidewalk when he arrived at the store; (2) Choate and her mother testified that the clerk had told them that he had just begun his shift and had not had time to apply ice melt, but time records contradicted this account, indicating that the clerk had been working for nearly two hours before Choate's fall; (3) Choate and her mother testified that the clerk should have been aware of Choate's injuries, but the clerk testified that Choate did not appear injured; and (4) Choate argued at trial that a roof leak caused an accumulation of ice outside the store that caused her fall, but multiple witnesses testified on behalf of ARS that the roof leaked only when melting and thawing occurred and could not have caused an accumulation of ice on that day because of the below-freezing temperatures. If the jury resolved each of these contradictions in favor of Choate, it could have conceivably found ARS 100% liable for Choate's fall. If, on the other hand, the jury had resolved each of these contradictions in favor of ARS, it could have found ARS 0% liable. This is precisely what the trial court indicated when it denied Choate's motion for a new trial. It concluded that "the

evidence was sufficient for the jury to have decided in favor of either party."

¶21　It is reasonable that the jury did not find either party solely liable for the fall but instead resolved some disputes in favor of Choate, some disputes in favor of ARS, and apportioned liability 60/40 between the two parties. The verdict is therefore supported by the evidence, and so we affirm the trial court's denial of Choate's motion for a new trial.

―――――――