**2021 UT App 43**

## THE UTAH COURT OF APPEALS

JERRY B. WRIGHT,
Petitioner,

*v.*

LABOR COMMISSION, BRENT BROWN CHEVROLET & BUICK, AND
WCF MUTUAL INSURANCE COMPANY,
Respondents.

Opinion
No. 20200103-CA
Filed April 15, 2021

Original Proceeding in this Court

Michael Gary Belnap, Virginius Dabney, and Stony
V. Olsen, Attorneys for Petitioner

Matthew J. Black, Attorney for Respondents Brent
Brown Chevrolet & Buick and WCF Mutual
Insurance Company

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1      Jerry B. Wright asks us to review the Labor Commission's decision denying his claim for benefits under Utah's Workers' Compensation Act (the Act). He contends that the Commission erred in relying on the medical panel's opinions because its members were both biased and unqualified to render medical opinions in his case. He also contends that the evidence does not support the Commission's determination that his work accident only temporarily aggravated his preexisting conditions. Because we conclude the Commission did not err in relying on the medical panelists' opinions, and because its decision is supported by substantial evidence in the record, we decline to disturb the Commission's decision.

BACKGROUND[1]

¶2      On August 20, 2007, Wright was injured while working for Brent Brown Chevrolet & Buick (Brown). He reported feeling "pain and a cold sensation in his spine" and "sharp pain in his mid and low back" while moving fixtures and other items as part of a remodeling project in Brown's body shop (the Accident). Wright took several days off work after the Accident and, on August 28, sought medical treatment for his back pain with Dr. Schumann, who prescribed physical therapy. One week later, on September 5, 2007, Dr. Schumann released Wright to work with no restrictions because Wright "was feeling much better."[2]

¶3      Nearly one year later, in July 2008, Wright noticed pain in his mid and low back. At the time, "there was no attribution of his back symptoms to his employment with Brown." Instead, his treating physician prescribed him medication for possible reflux disease.

¶4      Then, in September 2009, Wright again sought treatment for back pain, and he obtained x-rays, a bone scan, and MRIs of his thoracic and lumbar spine. Ultimately, Dr. Reichman, one of Wright's treating physicians, recommended lumbar surgery and performed the procedure in March 2012. In his post-operative notes, Dr. Reichman observed that Wright's lumbar spine "showed end-stage disc disease and severe stenosis." Although Wright's lumbar symptoms improved after surgery, his mid-

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *O'Connor v. Labor Comm'n*, 2020 UT App 49, ¶ 2 n.1, 463 P.3d 85.

2. This was not the first time Wright had suffered back pain. He injured his back in 1987 while moving heavy items for another employer and had surgery to address the issue in 1988.

back pain increased. Dr. Reichman diagnosed Wright with "T11 disc disease causing chronic pain syndrome," and he performed a "T11-12 decompression and fusion" of Wright's thoracic spine in March 2013.

¶5     That same year, Wright applied for a hearing with the Commission, claiming entitlement to workers' compensation benefits as a result of the Accident. Brown's medical consultant, Dr. Mattingly, evaluated Wright in March 2013 and opined that Wright's ongoing back issues were not related to the Accident. She concluded that the Accident "caused a minor temporary aggravation of the pre-existing thoracic degenerative condition" and that Wright "reached medical stability from his work injuries as of September 5, 2007." In contrast, Dr. Reichman opined that Wright had not reached medical stability from the Accident-related injuries as late as December 2012. Similarly, Dr. Leininger, a pain management specialist who treated Wright, opined in March 2013 that injuries Wright sustained in the Accident had not reached medical stability.

¶6     Because of the conflicting medical opinions, the administrative law judge (ALJ) appointed a medical panel to independently assess the medical aspects of Wright's claim. The ALJ appointed Dr. Jones, a general surgeon, as the medical panel chair and charged him with selecting at least one additional specialist to serve on the panel. Dr. Jones chose Dr. Biggs, a family practice and occupational physician, to be the second panel member. The ALJ asked the panel to, among other things, opine on what injury was caused or worsened by the Accident, what medical care was necessary to treat any such injuries, and whether those injuries had reached medical stability.

¶7     The panel reviewed Wright's extensive medical records and interviewed him about the Accident and his symptoms.[3] Its

---

3. The medical panel produced four reports over the course of the proceeding. Wright objected to the first three reports, and the

(continued…)

report included what the ALJ described as "a thorough discussion of intervertebral disc degeneration." Following that discussion, the panel applied its "understanding of degenerative changes" to Wright's condition and observed that his scans presented no evidence of acute injury but revealed "clear evidence of progressive degenerative disease . . . in many areas of the spine." Based on those observations, the panel concluded that the Accident caused a "[s]prain/strain of [Wright's] back muscles" and only temporarily exacerbated the degenerative disease of his thoracic and lumbar spine. The panel explained that the pain Wright experienced "every few years" after the Accident was "expected and [is] considered to be a normal manifestation of the chronic disease process" but that Wright's Accident-related injuries "reached stability in September 2007." And when asked in a supplemental inquiry whether Wright's injuries "returned to baseline"—meaning "the thoracic spine's condition immediately before the industrial accident"—the panel responded that "it is more probable than not that [Wright] was returned to baseline" by September 5, 2007. Finally, the panel opined that the "physician visits and a diagnostic procedure to manage the low back sprain/strain and the thoracic mid-back symptoms" were the only necessary treatments stemming from the Accident. "The panel further clarified that neither the 2012 lumbar fusion nor the 2013 T11 fusion were necessary" to treat the injuries attributable to the Accident.

¶8    Relying on the medical panel's evaluation, the ALJ concluded that the Accident "caused a temporary exacerbation of [Wright's] pre-existing lumbar and thoracic spinal degeneration" and that he was entitled to recover medical expenses for the physician visits and a diagnostic procedure

---

(…continued)
ALJ resolved those objections by making inquiries of the panel to which it responded in supplemental reports. No objection was made to the fourth report and the ALJ admitted all four reports into evidence.

associated with the Accident. But the ALJ rejected Wright's claim for temporary total disability compensation for the period of March 13, 2013, to the date of medical stability, concluding that Wright's Accident-related injuries "reached medical stability on September 5, 2007."[4] The ALJ also addressed Wright's objection to the medical panel's composition, as well as his contention that the panelists lacked the requisite expertise to evaluate his claims. The ALJ found that Dr. Jones has "extensive experience in causation analysis for work-related conditions" like the injuries alleged in Wright's claim and that "Dr. Biggs has extensive experience[] in diagnosing, treating and determining the medical cause of work related low back injuries and lumbar degenerative disc disease."

¶9     Wright filed a motion for review with the Commission. Among other things, he argued that the panel lacked the knowledge and skill to opine on his back injuries. He also challenged the ALJ's dismissal of his claim for temporary total disability, arguing that the evidence does not support the conclusion that the Accident caused only temporary aggravation of his preexisting conditions, which reached medical stability by September 5, 2007.

¶10    The Commission affirmed the ALJ's decision and adopted the ALJ's findings of fact. Regarding Wright's argument that the panel was not qualified, the Commission shared the ALJ's view that the panelists "ha[d] the requisite experience in treating the specific condition at issue in this matter." The Commission also determined that the panel's evaluation was persuasive and that

---

4. The ALJ also dismissed Wright's claims for permanent partial disability compensation and travel reimbursement but did so without prejudice. The ALJ determined that these claims were not ripe for adjudication because the parties excluded them from their stipulated findings of fact and request for referral to the medical panel. The dismissal of these claims is not at issue in our review.

its "opinion that the [Accident] resulted in only a temporary back injury that returned to baseline and reached medical stability by September 5, 2007, is supported by the evidence in the record." Specifically, the Commission concluded that the panel's opinions were supported by the opinions of Dr. Schumann and Dr. Mattingly, as well as Wright's imaging studies, and were consistent with Dr. Reichman's diagnoses of lumbar and thoracic degeneration.

¶11 Wright filed a motion for reconsideration. He argued again that the medical panel was not qualified to opine in this case. He also argued that the panel failed to offer meaningful analysis in its report and that his treating physicians' opinions should have been given more weight. The Commission denied Wright's motion, stating that Dr. Biggs and Dr. Jones were qualified to opine in this case because "they have extensive experience in treating back injuries." The Commission also rejected Wright's characterization of the medical panel's report, reaffirming that the panel had considered Wright's medical history, including the opinions of Dr. Reichman and Dr. Leininger, and had engaged in "a well-reasoned review and analysis" of Wright's back problems.

¶12 On the same day the Commission issued its order denying Wright's first motion for reconsideration, Wright filed a second motion for reconsideration. In his second attempt, Wright argued for the first time that the panel members were so "intimately intertwined" with WCF Mutual Insurance Company (WCF)—Brown's workers' compensation carrier at the time of the Accident—that they could not be impartial. He asserted that Dr. Biggs's employment as an adjunct professor at the Rocky Mountain Center for Occupational and Environmental Health (Rocky Mountain), coupled with monetary donations WCF made to Rocky Mountain, created a financial conflict of interest requiring the appointment of a new, "unconflicted" panel. The Commission rejected Wright's argument on procedural grounds, finding his second motion was untimely and not "contemplated or permitted by the applicable statutes and rules governing

reconsideration requests."[5] The Commission, therefore, reaffirmed its previous decision and denied Wright's requests for reconsideration.

¶13 Wright seeks judicial review.

## ANALYSIS

¶14 Wright challenges the Commission's decision on three separate grounds. First, he contends that the Commission erred in not rejecting the medical panel's opinions on the basis that at least one panelist had a conflict of interest that unfairly biased the panel's evaluation of his claim. Second, he contends that the Commission erred when it relied on the medical panel's opinions because the panel members lacked the necessary expertise to opine on the medical aspects of this case. Third, he contends that the Commission's determination that the Accident caused only a temporary aggravation of his preexisting conditions is not supported by substantial evidence.

### I. Conflict of Interest

¶15 Wright contends that a medical panel "is supposed to be impartial" but that the panel in this case was "not impartial at all." In particular, he asserts that panelist Dr. Biggs could not impartially evaluate his claim because WCF makes monetary donations to Rocky Mountain, which employs Dr. Biggs as an adjunct professor. Based on that alleged conflict, Wright asks this court to set aside the Commission's decision and order the appointment of a new medical panel.

---

5. Utah Code section 63G-4-302(1)(a) permits a party to file "a written request for reconsideration" within twenty days after the subject order is issued. Utah Code Ann. § 63G-4-302(1)(a) (LexisNexis 2019); *Resort Retainers v. Labor Comm'n*, 2010 UT App 229, ¶ 30, 238 P.3d 1081.

¶16    We agree that bias, or the potential for bias, created by a panel's purported connection to the workers' compensation insurance industry is an important issue worthy of exploration.[6] But we cannot reach the issue here. Wright did not raise this issue with the Commission until his second motion for reconsideration, and the Commission rejected his argument without reaching the merits, finding that it was untimely and improperly raised.

¶17    In his opening brief, Wright does not address the Commission's stated rationale for rejecting his argument. Instead, Wright focuses solely on the merits of his conflict-of-interest argument without addressing the fact that the Commission rejected his argument as untimely and procedurally improper. Although Wright addresses the timeliness issue in his reply brief, the reply brief "is reserved for answering any new matter set forth in the opposing brief, not for making an argument in the first instance." *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 21, 290 P.3d 930 (cleaned up)*; see also Hinkle v. Jacobsen*, 2019 UT 72, ¶ 25, 456 P.3d 738 ("When a party raises an issue for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." (cleaned up)). Because Wright does not address the Commission's "reasoning and explain why it was wrong in [his] opening brief," we will not disturb the Commission's decision on this issue. *See Bad Ass Coffee Co. of Hawaii v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 55, 473 P.3d 624; *see also Kendall v. Olsen*, 2017 UT 38, ¶ 13, 424 P.3d 12 ("We have consistently held that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will

_____

6. In his briefing, Wright explains that this issue has been raised in another Labor Commission case*, Gamez v. B&S Construction, Inc.*, No. 17-0330, 2019 WL 7599813 (Utah Labor Comm'n July 22, 2019). The *Gamez* case, and the conflict-of-interest issue, is now pending before the Utah Supreme Court (Case No. 20200625-SC).

not be considered." (cleaned up)); *Martin v. Kristensen*, 2019 UT App 127, ¶ 61, 450 P.3d 66 (explaining that the "failure to engage with the [lower tribunal's] reasoning until the reply brief is fatal"), *cert. granted*, 456 P.3d 386 (Utah 2019).

## II. Panel Members' Qualifications

¶18 Wright challenges the Commission's determination that Dr. Jones and Dr. Biggs were qualified under the Act to opine on the medical causation issues in this case. Based on the context in which this issue was raised before the Commission, we understand Wright to be challenging the Commission's refusal to sustain his objection to the medical panelists' expertise and thus the admission of their reports. "We review the [Commission's] refusal to exclude a medical panel report on the basis of an objection under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Foye v. Labor Comm'n*, 2018 UT App 124, ¶ 16, 428 P.3d 26 (cleaned up); *Clean Harbors Env't Services v. Labor Comm'n*, 2019 UT App 52, ¶ 10, 440 P.3d 916.[7] Because the record provides a reasonable basis for the Commission's decision, Wright's challenge fails.

---

7. Without citing authority in support, Wright contends that this issue presents a pure legal question, and he invites us to review it for correctness. In contrast, Brown and WCF argue that the issue presents a pure factual question, which we review for substantial evidence. Unfortunately, Wright does not engage on this issue and has made no argument to persuade us that we should apply a different standard of review from that applied in *Foye.* Accordingly, as set forth in that case, we will review this issue for abuse of discretion. *See Foye v. Labor Comm'n*, 2018 UT App 124, ¶ 16, 428 P.3d 26; *cf. Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 21, 364 P.3d 756 (explaining that the petitioner could not sustain her burden on review in "the absence of an argument squarely addressing," among other things, "the cases that cut against her position").

¶19    When there are conflicting medical opinions regarding the medical aspects of a workers' compensation claim, the Commission's rule requires the appointment of a medical panel. Utah Admin. Code R602-2-2(A)(1); *see also Foye*, 2018 UT App 124, ¶ 20 (explaining that a medical panel must be appointed "where one or more significant medical issues may be involved," including the issue of causation (cleaned up)). The panel's primary purpose is "to evaluate medical evidence and advise an administrative law judge with respect to the administrative law judge's ultimate fact-finding responsibility." *See Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶ 14, 339 P.3d 624 (cleaned up). The qualifications of a medical panel are set forth in Utah Code section 34A-2-601(1)(c). It states that "[a] medical panel appointed under this section shall consist of one or more physicians specializing in the treatment of the disease or condition involved in the claim." Utah Code Ann. § 34A-2-601(1)(c) (LexisNexis 2019).[8]

¶20    Wright contends that neither Dr. Biggs nor Dr. Jones was qualified to opine in this case because they are generalists instead of "physicians specializing in the treatment of [Wright's] medical injuries." He reasons that Dr. Biggs and Dr. Jones are "not specialists who conduct spinal surgeries nor are they qualified to recommend for or against such surgeries, or to administer pain treatments at the level of Dr. Leininger." Regarding Dr. Biggs specifically, Wright asserts that occupational physicians like Dr. Biggs must have a "wide knowledge of clinical medicine and must be competent in a number of important areas." (Cleaned up.) Wright argues that this makes Dr. Biggs a "jack of all trades and a master of none," rendering him unqualified as a specialist under the Act. As for Dr. Jones, Wright similarly reasons that because Dr. Jones treats patients "with a broad spectrum of diseases," he is not a

---

8. Because there have been no material changes to the statute since the panel's appointment in 2017, we cite the current version.

specialist when it comes to the issues in this case and "at best . . . provides access to the spine for other, qualified doctors, to treat." (Cleaned up.)

¶21　The Commission disagreed. Dr. Biggs and Dr. Jones were primarily empaneled to opine on whether the Accident caused the back pain Wright was experiencing years after the Accident and whether and when Wright achieved medical stability. The Commission determined that "[w]hile neither Dr. Biggs nor Dr. Jones practice exclusively in the area of orthopedic or spinal conditions," they "do have experience and expertise in treating back problems such as those at issue in Mr. Wright's case." Specifically, the Commission observed that Dr. Jones has "extensive experience in causation analysis of work-related conditions" and "has worked closely with spinal surgical specialists in the operating room" and that Dr. Biggs "has extensive experience in diagnosing and treating work related low back injuries and lumbar [degenerative disc disease], as well [as] determination of work-relatedness of lumbar disease." Based on the Commission's findings that the panelists "have extensive experience in treating back injuries—including those involving the spine"—we discern no abuse of the Commission's discretion in rejecting Wright's challenge to the medical panel's reports.

¶22　In reaching this conclusion, we reject Wright's premise that a physician with a generalist background is necessarily unqualified to render an opinion in a particular case. While both Dr. Biggs and Dr. Jones may practice in a wider variety of fields than other physicians, that background does not render them unqualified if, as the Commission found, they have "extensive experience in treating" the conditions at issue. *See Edwards v. Tillery*, 671 P.2d 195, 196 (Utah 1983) (per curiam) (determining that a medical panel member who no longer treated patients was still qualified because he had experience treating the "disease involved in the plaintiff's claim").

¶23　We also reject Wright's contention that the Commission should have excluded the medical panel's reports because neither member was qualified to conduct or even recommend for or against spinal surgeries or to administer certain pain treatments. Even assuming Wright's claims about the panelists' qualifications are accurate, his contention is ultimately immaterial. None of the physicians who evaluated Wright opined that his surgeries were not medically necessary. Thus, that issue was not in dispute and Wright suffered no harm from the panel's evaluation of it. *See White v. Labor Comm'n*, 2020 UT App 128, ¶ 25, 474 P.3d 493 ("We are unable to grant relief from an agency action unless the alleged error substantially prejudiced the person seeking judicial review . . . ." (cleaned up)). Further, the fact that neither physician was qualified to perform spinal surgery or administer certain medications does not render him unqualified to opine on whether the Accident medically caused or permanently aggravated a preexisting spine condition.

¶24　In sum, because the record supports the panel's qualifications, we decline to disturb the Commission's decision to admit the panel's reports.

### III. Sufficiency of the Evidence

¶25　Wright contends that the Commission erred in finding that the Accident caused only a temporary aggravation of his preexisting back conditions and in finding that he returned to his pre-accident baseline status by September 5, 2007. Wright argues that the Commission "ignored the long standing concept of 'lighting up' a pre-existing asymptomatic condition." He also argues that had the Commission properly considered all the evidence, it would have reached a different conclusion.

¶26　To the extent Wright presents a legal question, we review it for correctness. *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 24, 378 P.3d 1273. And to the extent Wright challenges the Commission's finding that the Accident only temporarily

aggravated his preexisting back conditions and was not causally connected to his ongoing symptoms, that challenge presents a question of fact that we review for substantial evidence. *Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 23, 307 P.3d 615 ("Aggravation of a pre-existing condition is a factual matter to be determined by the ultimate finder of fact."); *see also Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 38, 364 P.3d 756 ("Whether medical causation has been established is an issue of fact, which we review for substantial evidence."). "Substantial evidence is more than a mere scintilla of evidence though something less than the weight of the evidence, and the substantial evidence test is met when a reasonable mind might accept as adequate the evidence supporting the decision." *Hutchings*, 2016 UT App 160, ¶ 30 (cleaned up).

¶27 For the reasons explained below, we decline to disturb the Commission's decision, concluding that it correctly applied the law and that there is substantial evidence in the record to support its findings.

¶28 Under the Act, an "employee . . . who is injured . . . by accident arising out of and in the course of the employee's employment, wherever such injury occurred, if the accident was not purposely self-inflicted, shall be paid" benefits. Utah Code Ann. § 34A-2-401(1) (LexisNexis 2019). Thus, in addition to proving that an injury was accidental, an employee must establish "that there is a causal connection between the injury and the employment." *White v. Labor Comm'n*, 2020 UT App 128, ¶ 12, 474 P.3d 493.

¶29 To prove medical causation,[9] an injured employee must establish "by evidence, opinion, or otherwise that the stress,

---

9. The causal connection element requires a showing of both medical and legal causation. *White v. Labor Comm'n*, 2020 UT App 128, ¶ 12, 474 P.3d 493. In this case, the parties do not

(continued…)

strain, or exertion required by his or her occupation led to the resulting injury or disability." *Fogleman*, 2015 UT App 294, ¶ 38 (cleaned up). Medical causation generally may also be established when "an industrial injury aggravates or lights up a pre-existing condition and has a causal connection with the subsequent onset of symptoms." *Id*. (cleaned up). To successfully assert that a work-related injury lit up a preexisting condition, the claimant "must prove the subsequent disability is medically the result of an exertion or injury that occurred during a work-related activity." *Virgin v. Board of Review of Indus. Comm'n*, 803 P.2d 1284, 1288 (Utah Ct. App. 1990) (cleaned up). That means "if a preexisting condition is only temporarily aggravated by an industrial accident, a claimant may only recover for the temporary aggravation, and not for unrelated symptoms or complications he may experience down the road." *Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 14, 397 P.3d 753.

¶30  Wright first asserts that in considering his claim for benefits, the Commission committed "legal error by ignoring the . . . concept of 'lighting up' a pre-existing asymptomatic condition." The record does not bear out this assertion. The Commission acknowledged that the Accident aggravated Wright's preexisting back conditions, and it awarded him benefits for the medical expenses he incurred related to the aggravation. It then considered whether the aggravation was temporary or permanent because, as explained, if the aggravation was temporary, Wright could not recover for unrelated symptoms he experienced after he returned to baseline. *See id.* This was a correct application of the law. Thus, we discern no legal error in the Commission's decision.

¶31  Wright next argues that the Commission's findings that he "returned to baseline" by September 5, 2007, and suffered

---

(…continued)
dispute the issue of legal causation; only the issue of medical causation is in dispute.

only a temporary aggravation of his preexisting conditions are not supported by substantial evidence. We disagree. The Commission's findings are supported by ample evidence, including the thorough opinions of the medical panel, the opinions of Dr. Mattingly and Dr. Schumann, the observations of Dr. Reichman, and Wright's medical records, including his imaging studies. Among other things, that evidence explained that Wright was not suffering from an acute injury but from the natural progression of a degenerative process that began before the Accident and flared up years later.

¶32   To resist this conclusion, Wright claims that the Commission's finding that his ongoing back issues were not caused by the Accident "was based entirely on the idea that . . . Wright did not seek medical attention between September of 2007 and October of 2008." But the record belies Wright's claim. While that fact was appropriately considered as part of the Commission's analysis, it was not considered in isolation, nor was it dispositive. As explained, the Commission relied on the opinions of multiple physicians who concluded that Wright's temporary aggravation had resolved by September 5, 2007, as well as the imaging studies, medical records, and Dr. Reichman's observations, all of which further validated the Commission's findings.

¶33   Wright also asserts that the Commission was remiss to rely on the opinions of Dr. Mattingly and Dr. Schumann because they were not "qualified orthopedic surgeon[s]" and their opinions "are just conclusions without reasoning." Again, we disagree. Dr. Mattingly and Dr. Schumann were not disqualified from offering their opinions about Wright's claim for the same reasons the medical panelists were not disqualified to opine in this case. *See supra* ¶¶ 21–23. The fact that these physicians were not orthopedic surgeons does not invalidate their assessments of the causation issues presented in this case.

¶34   Further, we do not share Wright's view that their opinions lacked reasoning. Dr. Mattingly's opinion is supported

by a fifteen-page report, in which she detailed Wright's current complaints, functional status, work status, prior injuries, current medications, family history, social history, a physical exam, and past medical history. With that history in mind, she then opined that the Accident had caused only a "temporary aggravation of the pre-existing thoracic degenerative condition." She made specific note of the lack of reported back pain for a considerable time after the Accident; the imaging studies showing degenerative findings in Wright's spine but showing no evidence of injury related to the Accident; the fact that Wright worked strenuous jobs after leaving Brown's employ; Wright's report that he worked out at the gym and was "physically active" after the Accident; and a general lack of evidence tying the Accident to his current problems. Wright may disagree with Dr. Mattingly's conclusions, but her opinion is not conclusory. And as for Dr. Schumann, his opinion is more limited in scope, but his decision to release Wright to regular job duties without restrictions on September 5, 2007, was based on his personal observation that Wright "was much improved" from when he was seen shortly after the Accident. The Commission did not err in relying on his real-time assessment.

¶35   Wright next assails the Commission for not giving more weight to the opinions of his treating physicians, Dr. Reichman and Dr. Leininger, who both opined that the Accident medically caused Wright's ongoing injuries. The Commission considered these opinions. But as "the ultimate finder of fact," *Foye v. Labor Comm'n*, 2018 UT App 124, ¶ 23, 428 P.3d 26 (cleaned up), the Commission has the discretion to decide what weight to give conflicting opinions, and we are in no position to reweigh the evidence, *see Choate v. ARS-Fresno LLC*, 2016 UT App 249, ¶ 20, 391 P.3d 344 ("[T]here is perhaps no more basic tenet of appellate law than that we will not find new facts or reweigh evidence."). Even if Wright's contrary findings are reasonable, he cannot meet his burden of persuasion because substantial evidence supports the Commission's findings. *See Hutchings*, 2016 UT App 160, ¶ 30 ("We will not overturn the Commission's factual findings if they are based on substantial evidence, even if

another conclusion from the evidence is permissible." (cleaned up)).

¶36    Finally, Wright contends that the Commission was wrong to conclude that he returned to baseline after the Accident, pointing to his claim that he never returned to a pain-free state. But this claim is not without dispute. In September 2007, Wright's injuries were "much improved," and he was accordingly released to work without restrictions. He next saw a doctor nearly ten months later in July 2008 complaining of mid- and low-back pain, but he made no mention of the Accident. And he did not seek treatment for back pain again until September 2009, more than one year later. Given these facts, the medical panel, the ALJ, and, in turn, the Commission, were not obligated to accept Wright's post-hoc statement that the pain never subsided. The Commission considered his statements in light of the record as a whole, and given the conflict in the evidence, we will not question its judgment. *See JP's Landscaping v. Labor Comm'n*, 2017 UT App 59, ¶ 14, 397 P.3d 728 ("It is the province of the Commission, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Commission to draw the inferences." (cleaned up)).

¶37    In short, we decline to disturb the Commission's decision denying Wright temporary total disability benefits. The Commission applied the correct legal standard in considering whether the Accident lit up Wright's preexisting conditions, and substantial evidence supports the Commission's findings that the Accident-related injuries were only temporary.

CONCLUSION

¶38    We conclude that Wright has not shown that the Commission erred in rejecting his claim of medical panel bias as untimely. We also conclude that the Commission did not err in determining that the panel members were qualified to render a

medical opinion in this case. Finally, we conclude that substantial evidence supports the Commission's findings that the Accident caused only a temporary aggravation of Wright's preexisting conditions and that he reached medical stability by September 5, 2007. We therefore decline to disturb the Commission's decision denying Wright benefits.

—————