**2015 UT App 210**

THE UTAH COURT OF APPEALS

RIGHT WAY TRUCKING, LLC AND WORKERS'
COMPENSATION FUND,
Petitioners,
*v.*
LABOR COMMISSION AND JAMES EACHO,
Respondents.

Opinion
No. 20140552-CA
Filed August 20, 2015

Original Proceeding in this Court

Eugene C. Miller Jr., Attorney for Petitioners

T. Jeffery Cottle, Attorney for Respondent
James Eacho

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

ROTH, Judge:

¶1     Right Way Trucking LLC (Employer) seeks judicial
review of a decision by the Utah Labor Commission (the
Commission) denying Employer's motion for reconsideration
and affirming the order of an administrative law judge related to
a workers' compensation claim. We decline to disturb the
Commission's decision.

BACKGROUND

¶2     James Eacho (Employee) worked for Employer as a truck
driver. In July 2012, Employee returned to his home in Pleasant

Grove, Utah, at around 9:30 p.m. after a multi-day assignment that took him through Oregon, Idaho, and Washington. During the trip he made several deliveries of heavy bathroom fixtures such as showers and tubs. On the last day, he made two deliveries that required him to move several tubs and showers from inside the truck trailer to its tailgate while the outside temperature was as high as 98 degrees, and the temperature inside the trailer was as high as 120 degrees. Upon his return home, Employee became ill and his wife took him to the hospital the next day. He was diagnosed with acute sepsis with shock. He remained hospitalized for the next month. Upon discharge, his final diagnoses were septic shock, acquired pneumonia, cardiogenic shock, probable heat stroke, renal failure, cerebral infarct, and encephalopathy.

¶3 Employee filed a claim for workers' compensation benefits. In support of the claim, he submitted the statement of a physician who opined that Employee had "suffered from dehydration/heat illness due to his employment activities . . . and that the work activities likely created a medical causal relationship between the septic shock, acquired pneumonia, cardiogenic shock, probable heat stroke, renal failure, cerebral infarct, and encephalopathy." Employer's independent medical examiner (the IME), however, opined that the "primary cause of [Employee's] life threatening illness of July 2012 was the streptococcal infection in his blood stream." The IME also stated that the source of the streptococcal infection was "unknown" and that Employee's "intense work schedule just prior to the infection may have made [Employee] more susceptible to this infection but did not cause the infection."

¶4 After entering interim findings of fact and conclusions of law, the Administrative Law Judge (the ALJ) referred the matter to a two-member medical panel. The question submitted to the panel was "Did [Employee's] July 20, 2012 work activities aggravate, light up, accelerate, or in any way contribute with the streptococcal infection to enhance [Employee's] medical condition?" The directions to the medical panel contained this statement from the ALJ:

> [Y]ou are bound by the Findings of Fact and Conclusions of Law contained in my Interim Order. . . . If you discover additional facts which are not contrary to the facts in the Findings of Fact and Conclusions of Law contained in my Interim Order, and you use them in your examination and evaluation, it will be necessary to include them in your report and explain how the additional facts affected your analysis and conclusions.

The medical panel's subsequent report to the ALJ concluded, "It is medically reasonable that [Employee] developed a form of heat stress and possible heat stroke, which triggered a systemic inflammatory response which allowed streptococcus, a normal gut flora, to enter his blood stream which caused his sepsis." The medical panel included in its report a summary of the interviews with Employee and his wife that each panel-physician conducted as part of the examination.

¶5    Employer filed an objection to the medical panel report and requested an objection hearing. Employer argued that by including the summary of the interviews with Employee and his wife, the panel deviated from the ALJ's interim order. Employer, as explained by the ALJ, contended that those oral histories "omitted facts, added facts, [and] altered facts," making the medical panel's report unreliable. Employer also submitted a written response from the IME that stated:

> I disagree with the conclusion by [the medical panel] that heat related illness caused "leaky" gut, that in turn lead to bacteremia. To my knowledge, heat related illness does not typically cause bacteremia. In addition, group A streptococcus is not considered a normal gut flora. As stated in my initial report dated January 25th 2013, heat related illness may have made [Employee] more susceptible to infection but did not cause his illness per se.

¶6     The ALJ rejected Employer's objections and denied its request for an objection hearing. The ALJ explained that the differences in the oral histories submitted by the medical panel and the findings of fact in the ALJ's interim order were "very minor and have little bearing on the medical panel's determination." The ALJ also concluded that the IME's response to the report did not constitute new evidence. Accordingly, the ALJ admitted the medical panel's report into evidence.

¶7     Employer filed a motion for review with the Commission contending that the ALJ violated Employer's right to due process by admitting the medical panel's report into evidence and abused her discretion by denying its request for an objection hearing. The Commission affirmed the ALJ's decision. Employer then filed a motion for reconsideration in which it asked the Commission to send the following question to the medical panel: "[D]id you rely solely on the facts set forth in the [ALJ's] Interim Order? If not, please explain what additional facts you relied on in rendering your opinion." Employer also requested that the IME's response to the medical panel report be sent to the medical panel for comment. The Commission denied Employer's motion and the request to send Employer's question or the IME's response to the medical panel. Employer seeks judicial review of the Commission's final order.

ISSUES

¶8     Employer argues that the Commission abused its discretion in affirming the ALJ's denial of Employer's request for an objection hearing, by failing to send the IME's response to the medical panel for further comment, and by refusing to send Employer's proposed question to the panel.

ANALYSIS

¶9     Employer's arguments distill into two main issues: (1) the propriety of the admission of the medical panel's report into

evidence and (2) whether the statement made by the IME in response to the medical panel's report constituted new evidence that should have been considered by the ALJ. We conclude that the ALJ did not abuse her discretion in admitting the medical panel's report into evidence and, as a result, that the Commission did not abuse its discretion in affirming that decision. We also conclude that the Commission abused its discretion in refusing to query the medical panel about whether it considered only the facts set out in the Interim Order. We further conclude that the IME's response to the medical panel's report did not constitute new evidence requiring either an objection hearing or submission to the medical panel.

## I. Admission of the Medical Panel's Report into Evidence

¶10     Employer argues the ALJ abused her discretion, as did the Commission in affirming the ALJ's decision, in admitting the medical panel's report into evidence. After a medical panel has completed its report, "if a written objection to the report is filed . . . the administrative law judge may set the case for hearing to determine the facts and issues involved." Utah Code Ann. § 34A-2-601(2)(f)(i) (LexisNexis Supp. 2013). An ALJ's decision whether to admit a medical panel report into evidence or to hold an objection hearing is entirely discretionary, and we will provide relief only when "a reasonable basis for that decision is not apparent from the record." *Borja v. Labor Comm'n*, 2014 UT App 123, ¶ 9, 327 P.3d 1223 (citation and internal quotation marks omitted). Accordingly, we consider whether a reasonable basis for the ALJ's decision to deny Employer's request for an objection hearing, and the Commission's subsequent affirmance of that decision, is apparent from the record. *See id.*

A.     The ALJ's Decision to Receive the Medical Panel Report Without an Objection Hearing Was Within Her Discretion.

¶11     After the medical panel submitted its report, Employer filed an objection to its admission into evidence. Alternatively, Employer requested a hearing. Employer contended that the

medical panel "did not rely on the stipulated facts that were in the [i]nterim [o]rder" as it had been instructed to do. Employer also argued that the report was "completely unreliable" because, due to the inclusion of the medical histories, the panel improperly relied on "several omitted facts, added facts, and altered facts" that differed from those found in the interim order. Employer argued that it was "inappropriate for a medical panel to substitute its own factual findings in lieu of an administrative law judge's findings."

¶12　The ALJ denied Employer's request for a hearing and admitted the medical panel's report into evidence. The ALJ explained, "[T]he medical panel relied on facts identical to those relied upon by [Employee's] treating physician and [Employer's] own expert. The differences [Employer] point[s] to . . . are very minor and have little bearing on the medical panel's determination, given the medical reasoning used by the panel." She concluded, "As a result, [Employee's] objections that the medical panel relied on facts provided by [Employee's] wife and the medical panel relied on additional or omitted facts are not persuasive and are therefore dismissed." We conclude the ALJ did not abuse her discretion in admitting the report into evidence without holding an objection hearing.

¶13　Medical panels act within their charge by taking oral histories and including them in their reports. *See Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶¶ 19–21, 339 P.3d 624 ("[A] medical panel may conduct its own medical examination and review of the medical record. This court has therefore allowed Commission decisions to stand where the medical panel conducted its own examination and interview of the claimant." (citation and internal quotation marks omitted)). And we have previously considered a challenge by an employer "that the medical panel improperly considered extra-record evidence" in the context of an identical instruction from the ALJ that the medical panel explain the impact of any additional consistent facts on its conclusions. *Id.* ¶¶ 3, 20. In that case, we concluded that because "[t]he medical panel report expressly noted information that originated from statements made by [the

employee's] family members during the panel's examination," "the medical panel complied with the ALJ's instruction that it include in its report any 'additional facts which are not contrary to the facts in the Findings of Fact and Conclusions of Law contained in [her] Interim Order' that the panel used in its examination and evaluation." *Id.* ¶ 20 (third alteration in original). We come to a similar conclusion in this case.

¶14     Here, the medical panel report clearly designated the oral histories as summaries of statements made by Employee and his wife and not as formal factual findings. The report contained numerous statements like "[Employee] states that . . . ," and "[Employee] says . . . ." And while the medical panel did not itemize each fact provided in the oral histories that was not present in the interim order and separately explain its impact on the panel's analysis, Employer has not persuaded us that the medical panel failed to substantially comply with the ALJ's instructions. Rather, to the extent that the oral history summaries include "additional" facts, the medical panel complied with the ALJ's instructions to "include them in [its] report" by summarizing those facts in the report itself. *See id.*

¶15     Employer contends, however, that it was not just the inclusion of additional facts that was improper, but the medical panel's reliance on them without a detailed description as to how each fact impacted the ultimate conclusion. Employer argues that the ALJ should therefore have determined the medical panel's report was unreliable. But in considering this argument below, the ALJ concluded that the differences between the facts Employer claimed had gone unexplained and the facts in the interim order were "very minor and have little bearing on the medical panel's determination." On appeal, Employer has failed to engage with the ALJ's reasoning. Instead, Employer repeats the approach it appears to have taken below—simply detailing what it sees as the report's diversions from the interim order's instructions—without any meaningful attempt to analyze their significance to the panel's ultimate determination.

¶16    Indeed, the closest Employer gets to explaining the materiality of its concerns is the following statement in its opening brief: "A person's symptoms determines the doctor's diagnosis. Whether o[r] not there was an overlap between [Employee's] symptoms and his work duties is material in making the correct medical diagnosis." In its reply brief, Employer additionally argues, "If [Employee] was not feeling ill until he got home could have a significant impact on whether or not he suffered a heat related illness due to his work." From these statements, it appears Employer's concern is not whether Employee suffered a heat-related illness—a conclusion Employer's own IME agreed with when he stated that "it is medically probable that [Employee] suffered a heat related illness"—but whether that illness was work-related. While Employer never states so explicitly, Employer's primary concern seems to be the discrepancies it alleges in the oral histories and the facts in the interim order related to the timing of the manifestation of Employee's developing symptoms and the timing of Employee's work-related exertions. But in the end, Employer's arguments do not persuade us that the ALJ abused her discretion, nor has Employer demonstrated that the ALJ's determination that any divergence between the facts in the interim order and panel report's oral histories was "very minor" and "ha[d] little bearing on the medical panel's determination" was unreasonable.

¶17    For example, Employer points to the interim order, which states, "[Employee] does not remember too much about the evening after arriving home but has been told that he was shaking, had diarrhea and a fever." The oral histories add that Employee was "very tired and not himself," after returning home, "parked the car crooked," "kept repeating himself" and was "acting like he was cold even though it was hot outside." The oral histories also state that the next morning, Employee "was not able to make much sense," "was incoherent with speech," and "had little to no coordination." These facts seem to do little more than fill in details about Employee's condition at the time. And Employer does not explain how the panel's conclusion that Employee suffered from work-related heat

illness would have been materially undermined without them. We cannot see how the ALJ abused her discretion in determining a statement by Employee that he was "out of shape," a statement included in the oral histories but not in the interim order, was either "very minor" or had "little bearing" on the panel's conclusion that Employee's work activities contributed to his heat illness.

¶18   Other discrepancies in the interim order and the oral histories that Employer relies on are equally unpersuasive. For example, the interim order states, "[Employee] does not remember feeling ill or having a headache at any time between Twin Falls and arriving at home," but the oral histories state that "[Employee] called [his wife] after he unloaded the trailer in Twin Falls and told her he felt awful, his heart was beating fast and hard and he was overall not feeling well." Employee's wife also reported in her oral history that, during what appears to be the same conversation, "[Employee] sounded really out of breath and panting." The two sets of statements do not appear as inconsistent as Employer claims. Rather, the timing of the telephone call and its description of symptoms seem to fit within the circumstances surrounding the crucial Twin Falls delivery described in the interim order. The parties agree that after completing his last delivery in Twin Falls, Employee "remembers perspiring and he testified that he felt exhausted and tired." Thus, Employer's contention that the medical panel report's description of Employee's telephone conversation with his wife "after he unloaded the trailer in Twin Falls" but, according to the oral history, before he drove to his next destination, does not seem to conflict at all with the interim order's observation that Employee felt "exhausted" while in Twin Falls but did "not remember feeling ill or having a headache at any time between Twin Falls and arriving home." Moreover, considering Employee's apparent condition at the time, the fact that he did not remember facts he told his wife on the phone comes as no surprise.

¶19   Employer also argues that the medical panel's oral history description of events at the end of Employee's trip diverges from

the stipulated facts in the interim order. The order states that Employee did "not remember too much about the evening after arriving home but has been told that he was shaking, had diarrhea and a fever." In his oral history, included in the panel's report, however, Employee gives a bit more detail. It relates that he began "to experience more symptoms" in "the last remaining minutes of his drive" and that he was "tired, felt chilled despite the heat and was not thinking well." These statements, again, seem to add some additional detail to the interim order's stipulated facts, but the discrepancies could be reasonably described as "minor." A similar conclusion can be made about the difference between the interim order's stipulation that Employee made a forty-five minute stop the day before he was admitted to the hospital, while the panel report's oral history states that the stop lasted an hour. These discrepancies seem trivial in the recounting, and Employer makes little effort to dispel that impression. A similar dearth of analysis also impedes Employer's facially more significant complaint that the panel report omitted any mention of the stipulated facts that Employee's truck was air conditioned, that the Idaho Falls warehouse where he stopped for a while on his way home had air-circulating fans, and that he "always carr[ied] plenty of water." While this suggests to us a possible argument that Employee had the potential for recovery from the heat-related distress he experienced during his Twin Falls exertions during the drive over to Idaho Falls and eventually home, Employer does not make such an argument beyond what may be implied from its listing of factual deviations it claims are "significant."

¶20 In summary, the operative facts in this case are those found by the ALJ and approved by the Commission. *See Speirs v. Southern Utah Univ.*, 2002 UT App 389, ¶ 10, 60 P.3d 42. Given Employer's failure to sufficiently explain the significance of any additional, inconsistent, or omitted facts, we are not persuaded that the ALJ erred in concluding that any factual discrepancies in the medical panel report were "very minor" and "ha[d] little bearing on the medical panel's determination." Accordingly, we conclude that the ALJ was well within her discretion to determine that the medical panel's efforts to explain the facts it

relied on in coming to its conclusion were satisfactory and that any deviation from her order did not render the entire report void or unreliable, as Employer argues. We therefore conclude the ALJ did not abuse her discretion in admitting the medical panel's report into evidence or her denial of Employee's request for an objection hearing.

B.    The Commission Did Not Abuse Its Discretion in Denying Employer's Request for Clarification.

¶21    For similar reasons, we conclude that the Commission did not abuse its discretion in affirming the ALJ's decision and refusing to send the following question to the medical panel: "Did you rely solely on the facts set forth in the [ALJ's] Interim Order? If not, please explain what additional facts you relied on in rendering your opinion." The Commission explained that it was "not convinced that the medical panel actually relied on the allegedly inconsistent facts" to begin with and affirmed the ALJ's decision, which included her finding that the additional facts were "minor" and immaterial. We see no abuse of discretion in this determination. Employer has failed to convince us that the Commission's refusal to send the requested query back to the medical panel was unreasonable in light of the fact the ALJ had already determined that the medical panel report was reliable and that any reliance by the medical panel on facts additional to the interim order was immaterial. Having concluded that the ALJ did not abuse her discretion in admitting the medical panel's report into evidence, we also conclude that the Commission did not abuse its discretion in affirming that decision and in denying Employer's request for clarification.[1]

---

1. We are not persuaded that the medical panel's inclusion of these additional facts and its omission of certain facts, combined with its failure to specifically state that it read the ALJ's interim order, is proof that the medical panel completely ignored and failed to read or rely on the ALJ's interim order. Employer goes so far as to argue in its reply brief that, given the presence of

(continued…)

II. New and Conflicting Medical Evidence

¶22 Employer contends that the IME's response to the medical panel's report constituted conflicting medical evidence that required the ALJ to hold an objection hearing prior to admitting the panel's report into evidence. The Utah Administrative Code states, "A hearing on objections to the panel report may be scheduled if there is a proffer of conflicting medical testimony showing a need to clarify the medical panel report." Utah Admin. Code R602-2-2(B)(4). Rule 602-2-2 also states that when new medical evidence is presented, in lieu of an objection hearing, the ALJ can "re-submit the new evidence to the panel for consideration and clarification." *Id.* Accordingly, Employer argues that the Commission abused its discretion when it refused to send the IME's response back to the medical panel for further consideration. We see no abuse of discretion in the ALJ's and the Commission's decisions that the IME's response did not constitute new or conflicting medical evidence that required them either to provide an objection hearing or to send the IME response to the panel for further consideration.

¶23 The case of *Resort Retainers v. Labor Commission*, 2010 UT App 229, 238 P.3d 1081, is instructive. There, the employer "offered a new, more recent medical opinion from yet another doctor . . . recommending against surgery." *Id.* ¶ 31. "The

_____

(…continued)
additional facts and the absence of the omitted ones, that "[i]t is certainly conceivable that a medical panel could only read the cover letter and the medical records and the diagnostic records and render an opinion." We are unconvinced that the panel's failure to state specifically that it read and relied on the interim order means that it did not, particularly in light of its statement that it "independently reviewed the file and imaging studies made available to the panel." Any argument by Employer that the medical panel failed to read the interim order is entirely speculative.

Commission reviewed the new medical opinion and determined that 'the medical consultant based his opinion on the medical evidence that the medical panel had already reviewed.'" *Id.* "In other words, there was no *new* medical information, but simply a new opinion based on information already reviewed by the medical panel and the Commission. As a result, the Commission 'decline[d] to reopen the evidentiary record to include'" the new statement. *Id.* (alteration in original). We concluded that

> [t]he Commission's decision to deny a new evidentiary hearing following a new medical opinion on issues already decided is within the bounds of reasonableness and rationality. If the process of determining benefits were to require a new hearing following each new opinion, without requiring actual new information or status, the process would potentially never end. The Commission did act reasonably in reviewing the new medical opinion and then determining that the opinion did not provide new information . . . sufficient to necessitate a new evidentiary hearing.

*Id.* ¶ 32.

¶24 We arrive at a similar conclusion in this case. In his initial report, the IME opined that "the primary cause of [Employee's] life threatening illness of July 2012 was the streptococcal infection in his blood stream" and while Employee's "intense work schedule just prior to the infection may have made [Employee] more susceptible to this infection," it "did not cause the infection." Rather, the IME explained, though "[i]nvasive group A strep infections are usually acquired from a state of colonization in one's own upper airway or through a break in the skin," the initial source of the strep in this case was "unknown." Because the ALJ considered this opinion to conflict with Employee's treating physician's opinion that the infection and other conditions resulted from employment-related heat illness, the matter was referred to the medical panel. After the medical panel filed its report, Employer objected and requested

a hearing based on the following response to the panel report from the IME:

> I am not an expert on heat related illnesses. However, based on the patient's history of a heavy work load on a very hot day, I think it is medically probable that [Employee] suffered a heat related illness . . . . However, . . . I disagree with the conclusion by [the medical panel] that heat related illness caused a "leaky" gut, that in turn lead to bacteremia. To my knowledge, heat related illness does not typically cause bacteremia. In addition, group A streptococcus is not considered a normal gut flora. As stated in my initial report dated January 25th 2013, heat related illness may have made [Employee] more susceptible to infection but did not cause his illness per se. The etiology of this patient[']s group A streptococcus blood stream infection is unknown as is true in many cases.

This response essentially repeated the IME's original opinion that a strep infection of unknown origin, not work activities, caused Employee's illness. The only additional information the IME provided was his agreement that Employee probably "suffered a heat related illness" that was apparently work-related and his disagreement with the medical panel's conclusion "that heat related illness caused a 'leaky' gut," that "[led] to bacteremia." He explained this disagreement by stating that "[t]o [his] knowledge, heat related illness does not typically cause bacteremia" and that "group A streptococcus is not considered a normal gut flora." But as the ALJ herself noted, the IME's first criticism must be considered in light of his concession that he was "not an expert on heat related illnesses" and the second in light of the dearth of any explanation for his bare conclusion. Thus, given the nature of the IME's response, we are not persuaded that either the ALJ or the Commission abused its discretion in declining Employer's requests to hold an objection hearing or send the IME's response back to the panel. While they might rationally have made another decision under the

circumstances, Employer has not shown that the decision they did make exceeded the bounds of reasonableness. *See id.*

### III. Attorney Fees

¶25    Employee requests attorney fees incurred in pursuing this judicial review proceeding. Attorney fees in workers' compensation cases are governed by rule 602-2-4 of the Utah Administrative Code. "For legal services rendered in prosecuting or defending an appeal before the Utah Court of Appeals," the attorney fee awarded shall be "30% of the benefits in dispute before the Court of Appeals." Utah Admin. Code R602-2-4(C)(3)(b). Because of the pendency of this proceeding, the amount in dispute has not yet been determined. We therefore return this matter to the Labor Commission for a determination of the amount that will be awarded as a result of our decision not to disturb the Commission's decision in this case, and to calculate an award of attorney fees to Employee in accordance with the rule.

### CONCLUSION

¶26    We conclude that the Commission appropriately affirmed the ALJ's order because the ALJ did not abuse her discretion in admitting the medical panel's report into evidence or denying Employer's request for an objection hearing. We also conclude that the Commission did not abuse its discretion in denying Employer's request to send a query to the medical panel or the IME's response to the report to the medical panel for review.

¶27    Accordingly, we decline to disturb the Commission's order and we return this matter for a determination of attorney fees.

_____