**2018 UT App 124**

# THE UTAH COURT OF APPEALS

TIMOTHY FOYE,
Petitioner,

*v.*

LABOR COMMISSION, KODIAK FRESH PRODUCE,
AND EMPLOYERS ASSURANCE COMPANY,
Respondents.

Opinion
No. 20161039-CA
Filed June 21, 2018

Original Proceeding in this Court

Aaron J. Prisbrey and Trevor C. Sanders, Attorneys
for Petitioner

Ford G. Scalley and Alisha M. Giles, Attorneys
for Respondents Kodiak Fresh Produce and
Employers Assurance Company

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1     Timothy Foye asks us to review the Labor Commission's decision denying his claim for benefits under Utah's Workers' Compensation Act. He alleges several errors related to the Commission's Appeals Board's (the Board) ultimate denial of benefits. In particular he argues that the Board exceeded its discretion when it overruled his objection to the medical panelists' qualifications to render a medical opinion in his case. He also contends that the Commission's rule R602-2-1(F)(3), which permits a respondent to require an employee to submit to a medical examination with the physician of the respondent's choice, constitutes an unconstitutional delegation of legislative authority to a respondent. On that basis, he contends that neither

the medical panel nor the Board can rely upon his employer's physicians' reports to dismiss his claim. Because we agree with Foye that the Board exceeded its discretion in overruling his objection regarding the medical panelists' qualifications, we set aside the Board's decision, with instructions to appoint a new medical panel to evaluate the issue of medical causation. However, we approve the Board's decision that rule R602-2-1(F)(3) does not constitute an unconstitutional delegation of authority.

BACKGROUND

¶2     In May 2014, Foye sought compensation benefits related to a work accident that occurred in October 2013 while he was employed with Kodiak Fresh Produce (Kodiak) as a commercial truck driver. He alleged that he was exposed to "high levels of carbon monoxide" due to a carbon monoxide leak from his truck's engine while he sat in the truck's cab for approximately four hours, waiting for a blizzard to pass. He claimed that as a result of the carbon monoxide exposure, he sustained permanent brain damage, resulting in "headaches, balance, vision & hearing problems, depression, anxiety, [and] problems concentrating."

¶3     A number of Foye's treating physicians diagnosed him with carbon monoxide poisoning. One of his physicians, an expert in hyperbaric medicine, opined that Foye suffered brain damage from the carbon monoxide exposure and predicted that the effects of the exposure "will affect him his entire life." Another of his treating physicians, however, opined that it was unlikely the exposure caused his symptoms and that Foye needed to see a psychiatrist to resolve his symptoms.

¶4     During the course of the proceedings, Kodiak required Foye to submit to two examinations with physicians it chose. One of the physicians, a neurologist, believed that Foye's presentation was within the neuropsychological, not the neurological, realm of medicine; the other physician, a neuropsychologist, opined that the exposure was not "a

probable cause or contribution" to the neuropsychological complaints Foye presented.

¶5     After an evidentiary hearing, the Administrative Law Judge (the ALJ) determined that there were "conflicting medical opinions as to whether [Foye's] current condition . . . [was] causally related to his work accident." The ALJ therefore referred Foye's case to a medical panel. In her findings, the ALJ specifically identified the conditions involved in the claim: carbon monoxide poisoning, and/or Foye's potentially preexisting condition, which "may be pseudo-dementia." She requested the panel to, among other things, opine on whether Foye had a preexisting condition and, if so, whether the industrial accident aggravated, accelerated, or made symptomatic that preexisting condition.

¶6     The ALJ appointed Dr. Biggs, a board certified family medicine physician with experience in occupational medicine,[1] as the medical panel chair, noting in her charging letter that Dr. Biggs had been "specifically chosen because of [his] experience on CO poisoning cases." The ALJ instructed Dr. Biggs to "select the specialists [he] deem[ed] appropriate" to assist in the evaluation. Dr. Biggs chose Dr. Watkins, a board certified neurologist, to be the second physician on the medical panel.

¶7     The medical panel reviewed Foye's medical records and, in its report, extensively recited his medical history as well as his current complaints. The panel ultimately concluded that Foye did not suffer permanent neurological injuries from the carbon monoxide exposure. Rather, it concluded that any "temporary discomfort" Foye experienced from the exposure "would have resolved within a few hours," and that he was "medically stable with regards to his industrial exposure by the time of his discharge from the emergency department" on the date of the accident. The panel also concluded that Foye had "experienced

---

1. The record is silent as to the nature of this experience.

most of his current symptoms prior to the industrial accident" and that "the change in symptoms is more likely than not a progression of his inadequately treated psychiatric disease, rather than a manifestation of a delayed neurologic syndrome from a possible carbon monoxide exposure." As a result, the panel opined that the work accident caused no permanent impairment, that no medical care was currently necessary to treat the work condition, and that a permanent total disability was not established.

¶8      Foye objected to the medical panel report. He argued that the panel was not competent to conduct the evaluation, especially where neither of the panelists had expertise in offering psychiatric diagnoses, and he asserted that it failed to adequately address the carbon monoxide exposure issue or evidence. He also argued that his treating physicians were more competent than the panel, and he provided rebuttal letters from two of his treating physicians, each of whom disagreed with the panel's assessment. Dr. Weaver in particular disagreed with the panel's conclusion that Foye had not suffered permanent brain damage as a result of the exposure, and he contended that "the medical panel has a superficial understanding of carbon monoxide poisoning and its long-term impact." Foye requested a hearing to address his concerns.

¶9      Rather than hold a hearing to resolve Foye's objection, the ALJ sent the objection directly to the panel and requested that it report whether the objection changed its opinion. The panel responded that, after reevaluation, its conclusions "remain[ed] unchanged." In reaffirming its opinion, the panel addressed many of the comments raised as part of Foye's objection, but it did not specifically address his objection to the panel's competency to render an opinion in his case. Rather, the panel stated that it "did not offer a psychiatric diagnosis" but instead merely referred to Foye's medical records documenting pre-accident diagnoses, and that it only "rendered a neurological opinion . . . based on the evidence presented in [Foye's] medical

record and his interview and neurological examination by the medical panel."

¶10    Foye objected to the medical panel's second report, again contending that the panel was not "competent to render an opinion" in his case. He asserted that "there is no evidence the panel doctors have ever treated anyone for carbon monoxide poisoning." And he noted that in the panel's second report there was no attempt to challenge the assertion that the panel lacked competence to opine on his condition.

¶11    In her Findings of Fact, Conclusions of Law, and Order, the ALJ concluded that "the weight of the evidence" did not support Foye's assertion that the accident medically caused his ongoing symptoms, and she rejected his claim. The ALJ also determined that Foye's objections to the medical panel report were not well-taken, and the ALJ admitted the report into the record. In particular, the ALJ found the panel to be "qualified to review and consider the medical evidence and opinions in this case," that the panel's evaluation was "well thought out" and "logical," that the panel's ultimate opinion was supported by Kodiak's experts and the case history, and that the panel "acted in an impartial and neutral manner." As to Dr. Biggs, the ALJ noted that he was "specifically selected because he has experience in treating CO poisoning," "[a]s identified by the Utah Labor Commission medical director on the Medical Panel Chair directory." That directory was not included in the record. The ALJ found that the other panelist, Dr. Watkins, was "a board certified neurologist."

¶12    Foye filed a motion for review with the Board. In that motion, he largely repeated the arguments he made in his objections to the medical panel reports. Among other things, he argued that his treating physicians' opinions were superior to those of the medical panel, and that it lacked the knowledge and skill to opine on his carbon monoxide poisoning.

¶13    The Board affirmed the ALJ's decision, adopting the ALJ's findings of fact and making additional findings of fact material

to the motion for review. In regard to Foye's argument that the panel was not competent, the Board found that the panel "consisted of experts in occupational medicine and neurology, who are qualified to address the issue of medical causation as it pertains to [Foye's] neurological and cognitive impairments." The Board also found the medical panel's conclusions "persuasive on the issue of medical causation" and agreed with the ALJ that Foye had not established that the work accident was the medical cause of his current condition.

¶14 Foye filed a motion to reconsider with the Board. He argued for the first time that the opinions of Kodiak's medical examiners were "unconstitutionally obtained" through an impermissible delegation of legislative authority by the Commission to private third parties, such as insurance companies. On this basis, he contended that he was prejudiced by Kodiak's medical examiner reports because the Board relied on those reports to support the dismissal of his claim. The Board rejected Foye's non-delegation argument on its merits and denied Foye's request for reconsideration.

¶15 Foye now seeks judicial review.

ISSUES AND STANDARDS OF REVIEW

¶16 Foye argues that the Board abused its discretion by refusing to sustain his objection to the medical panelists' expertise and exclude the medical panel report on that basis. "We review the [Board's] refusal to exclude a medical panel report [on the basis of an objection] under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 8, 372 P.3d 44 (quotation simplified). In so doing, we will defer to the Board's factual findings about the issue so long as those findings are supported by substantial evidence. *See Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶ 11, 339 P.3d 624. "Substantial evidence is more than a mere scintilla of evidence though something less than the weight

of the evidence, and the substantial evidence test is met when a reasonable mind might accept as adequate the evidence supporting the decision." *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 30, 378 P.3d 1273 (quotation simplified).[2]

¶17 Foye also argues that the medical examinations by Kodiak's physicians of choice were obtained as a result of the Commission's unconstitutional delegation of legislative authority to Kodiak through its own rule. This is a question of law, and we review the agency's resolution of the question for correctness. *See Conley v. Department of Health*, 2012 UT App 274, ¶ 7, 287 P.3d 452.

ANALYSIS

I. The Medical Panel

¶18 Foye argues that the Board exceeded its discretion by admitting the medical panel report and dismissing his claim for permanent total disability benefits where it "fail[ed] to appoint a medical panel which is competent in the medical field of carbon monoxide poisoning or neuropsychological diagnoses, in violation of Utah statute." He contends that there is no evidence that either medical panelist specialized in the treatment of the conditions at issue in his case—either carbon monoxide

---

2. Foye also argues, as an alternative basis for setting aside the Board's decision, that the Commission's decision-making process was unlawful. As evidence, he points to ex parte communications between the ALJ and the medical panel, his claims of medical panel bias, and his complaint regarding the Commission's instruction to the medical panel on the issue of medical causation. As explained below, *see infra* ¶¶ 33–35, because we conclude it was harmful error to admit the medical panel report over Foye's objections to the medical panelists' expertise and ultimately instruct the appointment of a new panel on that basis, we do not address this argument.

poisoning or preexisting neuropsychological conditions, such as pseudo-dementia—as required by Utah Code section 34A-2-601. *See* Utah Code Ann. § 34A-2-601(1)(c) (LexisNexis 2015) (providing that "[a] medical panel appointed . . . shall consist of one or more physicians specializing in the treatment of the disease or condition involved in the claim"). As a result, he contends that the medical panel's report was without foundation, and he requests that we set aside the Board's dismissal of his claim and instruct the Commission to convene a new medical panel with physicians specializing in the treatment of his condition.

¶19   Foye's argument requires us to evaluate whether the Board exceeded its discretion in its resolution of his objection and by ultimately admitting the medical panel report. Utah Code section 63G-4-403 provides that an appellate court "shall grant relief only if, on the basis of the agency's record, it determines" that the agency action constituted "an abuse of the discretion delegated to the agency by statute" and that the "person seeking judicial review has been substantially prejudiced" as a result. *Id.* § 63G-4-403(4)(h)(i) (2016); *see also id.* § 63G-4-403(4)(g). *See generally Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶¶ 8–9, 258 P.3d 640. After briefly describing the use of medical panels in workers' compensation cases, we first consider whether the Board's resolution of Foye's objection constituted an abuse of discretion. Because we conclude that it did, we then consider whether Foye was substantially prejudiced thereby, ultimately concluding that he was. On that basis, we set aside the dismissal of Foye's claim for permanent total disability and instruct the Commission to appoint another medical panel with qualified panelists to assess the medical causation issue.

A.   The Appointment of Medical Panels

¶20   Utah Code section 34A-2-601 governs an administrative law judge's appointment of a medical panel. It provides that an administrative law judge generally has discretion to appoint a medical panel. *See* Utah Code Ann. § 34A-2-601(1)(a) (stating

that an administrative law judge "*may* refer the medical aspects of a case . . . to a medical panel" (emphasis added)). But an administrative law judge's discretion is limited by the Commission's rule that a panel *must* be appointed "where one or more significant medical issues may be involved," including when there are "[c]onflicting medical opinions related to causation of the injury or disease." Utah Admin. Code R602-2-2(A)(1). *See generally Migliaccio v. Labor Comm'n*, 2013 UT App 51, ¶ 3, 298 P.3d 676 (explaining that an administrative law judge is required to use a medical panel where there are "conflicting reports regarding medical causation of an employee's injuries" (citing *Willardson v. Industrial Comm'n*, 904 P.2d 671, 674 (Utah 1995))).

¶21 If a medical panel is appointed, Utah Code subsection 34A-2-601(1)(c) sets forth the required qualifications of its member physicians. It states, "A medical panel appointed under this section shall consist of one or more physicians specializing in the treatment of the disease or condition involved in the claim." The use of "shall" in this statute appears to "indicate[] mandatory action." *Friends of Great Salt Lake v. Utah Dep't of Nat. Res.*, 2017 UT 15, ¶ 29, 393 P.3d 291; *see also* Utah Code Ann. § 68-3-12(1)(j) (LexisNexis 2014) (providing that the word "shall" in the Utah Code should generally be construed as meaning "an action [that] is required or mandatory"); *Board of Educ. of Granite School Dist. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983) (stating that the word "shall" employed in statutes "is usually presumed mandatory"). And the provision specifically identifies what qualifies physicians to be appointed to a particular medical panel—those who "specializ[e] in the treatment of the disease or condition involved in the claim." Utah Code Ann. § 34A-2-601(1)(c); *see also Edwards v. Tillery*, 671 P.2d 195, 196 (Utah 1983) (per curiam) (concluding that a physician was qualified under this provision where the plaintiff's injury involved smoke inhalation and the physician at issue specialized in the treatment of pulmonary disease); *Zimmerman v. Industrial Comm'n*, 785 P.2d 1127, 1132 (Utah Ct. App. 1989) (concluding that the physicians on the medical panel—a neurologist and an

orthopedic surgeon—were qualified to render an opinion on medical causation where, at the time of the panel's appointment, the petitioner's diagnosis involved hip and back pain).

¶22    Thus, the statute's plain language requires that the panel consist of physicians who specialize in the "treatment of the disease or condition" at issue in the case. *See* Utah Code Ann. § 34A-2-601(1)(c). And nothing in this provision "limits this requirement or provides exceptions to it." *See Friends of Great Salt Lake*, 2017 UT 15, ¶ 29.

¶23    Once a medical panel report is completed, an administrative law judge and the Board have discretion to adopt or reject it on the basis of the evidence developed in the case. *See* Utah Code Ann. § 34A-2-601(2)(e) (LexisNexis 2015) (providing that, although an administrative law judge "may base . . . [her] finding and decision on the report of . . . a medical panel," an administrative law judge "is not bound by [the medical panel] report . . . if other substantial conflicting evidence in the case supports a contrary finding"); *see also Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 13, 372 P.3d 44 (explaining that "even if the ALJ chooses to adopt the medical panel's report, it is the prerogative and the duty of the [Board] to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions fairly and reasonably could be derived therefrom" (quotation simplified)). This is because the Board, not the medical panel, is the "ultimate finder of fact." *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 23, 378 P.3d 1273; *see also Bade-Brown*, 2016 UT App 65, ¶ 15 (stating that the Board "may also, in its role as the ultimate fact-finder, choose to rely on one portion of a medical panel report and to reject other inconsistent portions" (quotation simplified)); *Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶ 14, 339 P.3d 624 ("When a medical panel is convened, the role of the Medical Panel is to evaluate medical evidence and advise an administrative law judge with respect to the administrative law judge's ultimate fact-finding responsibility." (quotation simplified)).

¶24    However, if a written objection is made to a medical panel report, "the administrative law judge may set the case for hearing to determine the facts and issues involved." Utah Code Ann. § 34A-2-601(2)(f)(i). "An ALJ's decision whether to admit a medical panel report into evidence or to hold an objection hearing is entirely discretionary, and we will provide relief only when a reasonable basis for that decision is not apparent from the record." *Right Way Trucking, LLC v. Labor Comm'n*, 2015 UT App 210, ¶ 10, 357 P.3d 1024 (quotation simplified). Likewise, an administrative law judge's (and the Board's) findings about, and ultimate resolution of, the petitioner's objection must have support in the record to be sustained. *See Bade-Brown*, 2016 UT App 65, ¶ 19; *Danny's Drywall*, 2014 UT App 277, ¶ 11.

B.    Foye's Objections to the Medical Panel Report

¶25    Foye asserts on judicial review that the Board exceeded its discretion in affirming admission of the medical panel report where, despite the panel's opportunity to provide supportive evidence, no evidence exists to suggest that either panelist was qualified under Utah Code section 34A-2-601(1)(c), as there is no evidence that either panelist specialized in the treatment of carbon monoxide poisoning or preexisting pseudo-dementia. We agree.

¶26    As discussed above, we will sustain the Board's resolution of a petitioner's objection so long as there is a reasonable basis for that resolution in the record. *See, e.g.*, *Right Way Trucking*, 2015 UT App 210, ¶ 10. Because the record does not support the Board's determination that the medical panel was qualified to render an opinion in this case, we conclude that the Board exceeded its discretion by overruling Foye's objections on that basis and admitting the medical panel report.

¶27    In her initial interim findings, the ALJ identified the relevant disease or condition involved in the claim as "carbon monoxide poisoning" or a preexisting condition that "may be pseudo-dementia." In addressing Foye's objection to the medical panel report, the ALJ found the panelists qualified to address

these conditions based upon a Commission directory that apparently identified Dr. Biggs, a family medicine physician, as having experience treating carbon monoxide poisoning, and also based upon the fact that Dr. Watkins is a board certified neurologist. The directory is not part of the record.

¶28 On review of the ALJ's decision, the Board found the panelists qualified only after over-generalizing the conditions at issue. Rather than finding that the panelists were qualified to render an opinion based on their specialties in treating the identified conditions involved in the claim—carbon monoxide poisoning and/or preexisting pseudo-dementia—the Board determined that the panelists were "experts in occupational medicine and neurology, who are qualified to address the issue of medical causation as it pertains to [Foye's] neurological and cognitive impairments."

¶29 While we would ordinarily defer to the Board's findings on this issue, we cannot do so where there is no evidence in the record to support them. *See Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶ 11, 339 P.3d 624. Foye's objection put the panelists' qualifications to render an opinion directly at issue. But neither the ALJ nor the Board identified evidence that supported a conclusion that the panelists were specialists in treating carbon monoxide poisoning or pseudo-dementia. The directory the ALJ referred to as evidence that Dr. Biggs had experience with carbon monoxide poisoning was not included in the record,[3] and the panelists did not, in response to Foye's objection, provide evidence of their qualifications upon which the ALJ and the Board could rely. Further, the Board merely identified both physicians' general practice expertise as apparently sufficient. Thus, no record evidence supports the Board's determination that either panelist specialized in treating carbon monoxide poisoning or Foye's potentially preexisting

---

3. It is not clear that the directory would demonstrate the panelists' qualifications in any event.

pseudo-dementia. *See* Utah Code Ann. § 34A-2-601(1)(c) (LexisNexis 2015).

¶30    Accordingly, we cannot conclude that the ALJ and the Board had an evidentiary basis to find the panelists were in fact qualified and, on that basis, overrule Foye's objection. *See Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 8, 372 P.3d 44 (explaining that we will provide relief from the Board's refusal to exclude a medical panel report on the basis of an objection "if a reasonable basis for that decision is not apparent from the record" (quotation simplified)). Rather, in these circumstances— where the petitioner objected to the panelists' qualifications but no evidence was provided or adduced to rebut the objections— the objections were well-taken, and the medical panel reports should have been excluded. *See Johnston v. Labor Comm'n*, 2013 UT App 179, ¶¶ 29–31, 307 P.3d 615 (explaining that a reviewing court should consider whether a petitioner's objection to a medical panel report is well-taken by looking to the deficiencies alleged and the record supporting the validity of the panel report). The Board therefore exceeded its discretion in admitting the panel report over Foye's objections to the panelists' qualifications. *See id.*

C.    Substantial Prejudice

¶31    We also conclude that Foye was substantially prejudiced by the Board's admission of and subsequent reliance on the medical panel report over his objections to the panelists' expertise. *See* Utah Code Ann. § 63G-4-403(4) (LexisNexis 2016). A person is substantially prejudiced by an agency action if that challenged action was not harmless. *See Petersen v. Utah Labor Comm'n*, 2017 UT 87, ¶ 8, 416 P.3d 583; *WWC Holding Co. v. Public Service Comm'n*, 2002 UT 23, ¶ 7, 44 P.3d 714. "An error will be harmless if it is sufficiently inconsequential that there is no reasonable likelihood that the error affected the outcome of the proceedings." *Smith v. Department of Workforce Servs.*, 2010 UT App 382, ¶ 17, 245 P.3d 758 (quotation simplified).

¶32    The statute's plain language, requiring the panelists to be physicians specializing in treating the condition involved in the claim, indicates that a particular physician's qualifications vis-à-vis a particular claimed disease or condition matter; the obvious implication is that not every physician will be qualified to sit on a particular medical panel and render an opinion. *See* Utah Code Ann. § 34A-2-601(1)(c); *see also Edwards v. Tillery*, 671 P.2d 195, 196 (Utah 1983) (per curiam) (recognizing an objection to medical panelists' qualifications to render an opinion regarding the conditions at issue); *Zimmerman v. Industrial Comm'n*, 785 P.2d 1127, 1132–33 (Utah Ct. App. 1989) (same). And while the Board is not required to rely on the medical panel's findings, it is not unusual for the Board to do so. *Danny's Drywall*, 2014 UT App 277, ¶ 14. We conclude that under the circumstances present here, the Board's admission of the medical panel report was not harmless.

¶33    In this case, the issue of medical causation was disputed, and the medical panel was enlisted to assist the ALJ (and, later, the Board) in resolving this dispute and in making the medical causation determination. But there was no evidence that the panelists were qualified to render the medical causation opinions about the conditions at issue. Nevertheless, the ALJ admitted the medical panel report into evidence, which the Board affirmed. And, importantly, it is apparent from their respective decisions that the ALJ and the Board relied heavily upon the medical panel's medical causation conclusions to resolve the medical causation dispute and ultimately dismiss Foye's claim. Although the ALJ noted some medical opinion evidence apart from the panel's report regarding medical causation, she ultimately determined that the panel's report was a "well thought out" and "logical evaluation" that persuaded her that Foye had not demonstrated his current condition was medically caused by the work accident. The Board, in affirming the ALJ's decision, likewise found "the medical panel's conclusions to be persuasive on the issue of medical causation" and added that the panel's conclusions were "the product of . . . expert review."

¶34   In sum, the medical panel's apparent lack of requisite expertise is a fundamental defect and undermines the ALJ's and the Board's reliance on the panel's medical causation opinions and conclusions: the panelists were not duly qualified to assess the conditions involved in the claim as required under section 34A-2-601 or to render a medical opinion in the case at all. In these circumstances, where there is a fundamental defect in the medical panel's report—one that suggests the panelists were not qualified to serve on the panel in the first instance—and the ALJ and the Board relied on the defective report to resolve a causation dispute, we cannot conclude that admitting the medical panel report was harmless. *See Petersen*, 2017 UT 87, ¶ 8.

¶35   We therefore set aside the dismissal of Foye's claim for permanent total disability on the basis of the industrial accident in October 2013. We instruct the Commission to appoint another medical panel, with qualified panelists to assess the medical causation issue, and to then consider the issue of medical causation as it relates to Foye's claim.

## II. Foye's Other Claims

¶36   Foye has asserted one other primary claim on judicial review.[4] Foye contends that the Commission's promulgation of

---

4. As we have already noted, *supra* note 2, Foye also contends that the Commission engaged in an unlawful decision-making process in dismissing his case, and as evidence in support of this contention, he points toward several actions relating to the medical panel. In particular, he alleges that (1) the ALJ engaged in improper ex parte communications with the medical panel, (2) the Commission provided the medical panel with an out-of-jurisdiction instruction pamphlet that contains erroneous instructions regarding causation determinations, and (3) the Commission permitted a biased medical panel to render an opinion in his case. But each issue relates to the specific medical panel already convened and its members, actions, and

(continued…)

rule R602-2-1(F)(3), which permits employers to require an employee to submit to a medical examination by the physician of the employer's choice, constitutes an unconstitutional delegation of legislative authority to employers and insurance carriers under Article V, Section 1, of Utah's constitution.[5] On that basis, Foye claims that the Commission may not rely on the medical reports prepared by Kodiak's physicians. *See* Utah Code Ann. § 34A-2-602(1) (LexisNexis 2015) ("The division or an administrative law judge may require an employee claiming the right to receive compensation . . . to submit to a medical examination at any time, and from time to time, at a place reasonably convenient for the employee, and as may be provided by the rules of the commission.").

¶37 In particular, Foye argues that rule R602-2-1(F)(3) constitutes an unconstitutional delegation of legislative authority because it delegates the right and authority to respondent employers and insurance carriers to require medical examinations of the employee, without qualification, and in contravention to the employee's privacy. Foye contends that the rule improperly places "employers and insurance carriers on equal footing" with the Commission by essentially "remov[ing]

---

(…continued)

considerations. Because we are instructing the Commission to convene a new medical panel to address the question of medical causation, we need not consider these issues.

5. Article V, Section 1 of the Utah Constitution provides,

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

the exercise of discretion" or oversight over the conditions related to a respondent's entitlement to medical examinations from the Commission entirely. In making this argument, Foye relies heavily on our supreme court's decision in *Revne v. Trade Commission*, 192 P.2d 563 (Utah 1948), arguing that the circumstances in that case—where our supreme court struck down certain regulations as unconstitutional delegations of legislative power—are similar to those present in his case.

¶38 We are not persuaded. Although Foye claims that the rule essentially places the employer on the same level with the Commission and that the Commission, in promulgating the rule, has effectively surrendered all of its necessary oversight discretion to private parties, Foye has not demonstrated how this is so. While rule R602-2-1(F)(3) gives respondent employers the right to require an employee to undergo a medical examination, nothing in the language of rule appears to prevent an employee from seeking relief, or the Commission from providing relief, if the employer, for example, makes unreasonable demands of the employee related to a required medical examination. Nor has Foye provided evidence suggesting that, as a practical matter, the Commission has surrendered through the rule its discretion and oversight authority over employee medical examinations in workers' compensation cases.

¶39 In this regard, we agree with the Board that the case Foye primarily relies on in making his argument is inapposite. In *Revne*, our supreme court held that the Utah State Barber Board improperly delegated its legislative authority to the class of barbers. *Id.* at 568. In that case, the Board promulgated regulations that essentially conferred upon a 70% majority of barbers in an area the sole authority to initiate changes in prices or opening and closing hours for barber shops in a given area; under the regulations, the Barber Board was left with no power "to act for the public upon its own initiative." *Id.* In concluding the regulations were unconstitutional, the supreme court was especially troubled that, although the law was "passed to protect the public health and safety" and the Barber Board theoretically

stood between the public and the 70% of the barbers required to agree upon and initiate changes to prices and hours, the Barber Board's lack of initiative authority subjected the public interest to "the whim" of the barbers, a group "who may be very antagonistic to [the] public interest." *Id.* at 567–68. Here, in contrast, it is not apparent from the language of the rule that the Commission, in promulgating it, has necessarily surrendered its oversight and discretion over the medical examination process to employers or insurance carriers in contravention to the greater public's interest.

¶40    Furthermore, to the extent Foye is arguing that rule R602-2-1(F)(3) is not consistent with the policy or language of Utah Code section 34A-2-602(1)—the statute authorizing the Commission to make rules regarding medical examinations— Foye has not demonstrated how the rule is inconsistent. *See generally Robinson v. State*, 2001 UT 21, ¶¶ 14, 21, 20 P.3d 396 (explaining that an agency "may only effect policy mandated by statute" through their rules and that an "agency's rules need only be *consistent* with its governing statutes" (quotation simplified)). The plain language of the statute at least facially appears to confer upon the Commission discretion to make rules to facilitate medical examinations of the employee. *See State v. Briggs*, 2008 UT 83, ¶¶ 15–16, 199 P.3d 935 (addressing a statute that confers authority on the agency to define requirements and the authority to devise rules to prescribe procedures to fulfill certain requirements, and concluding that a statute that "merely confers discretion [on the executive agency at issue] to prescribe procedures . . . to fulfil statutory requirements" does not run afoul of the non-delegation doctrine). And rule R602-2-1(F)(3) appears to be just that—a rule facilitating medical examinations of the employee.

¶41    Accordingly, we are not persuaded that rule R602-2-1(F)(3) constitutes an unconstitutional delegation of legislative power to employers and insurance carriers, and we therefore decline to instruct the Commission that it may not rely on Kodiak's medical examinations.

CONCLUSION

¶42    We conclude that the Board exceeded its discretion when it found that the medical panelists were qualified to render a medical opinion in this case and on that basis overruled Foye's objection to the medical panel reports. We therefore set aside the Board's dismissal of Foye's claim for permanent total disability and instruct the Commission to appoint a new medical panel to evaluate the issue of medical causation. Because we set aside the Board's dismissal, we decline to address Foye's overall claim that the Commission engaged in an unlawful decision-making process. We nevertheless reject Foye's claim that the Commission's rule R602-2-1(F)(3) constitutes an unconstitutional delegation of legislative authority to respondents.

————————